[INSTANCE COURT. PRACTICE.]

## J. MANRO and others v. JOSEPH ALMEIDA, and the goods, chattels, and credits of the said ALMEIDA.

The Courts of the United States, proceeding as Courts of admiralty and maritime jurisdiction, have jurisdiction in cases of maritime torts, *in personam* as well as *in rem.*

The Courts of the United States, proceeding as Courts of admiralty and maritime jurisdiction, may issue the process of attachment to compel appearance, both in cases of maritime torts and contracts.

Under the Process Act of 1792, c. 137. [xxxvi.] s. 2. the proceedings in cases of admiralty and maritime jurisdiction in the Courts of the United States, are to be according to the modified admiralty practice in our own country engrafted upon the British practice; and it is not a sufficient reason for rejecting a particular process, which has been constantly used in the Admiralty Courts of this country, that it has fallen into desuetude in England.

The process by attachment may issue, wherever the defendant has concealed himself or absconded from the country, and the goods to be attached are within the jurisdiction of the admiralty.

It may issue against his goods and chattels, and against his credits and effects in the hands of third persons.

The remedy by attachment in the admiralty, in maritime cases, applies even where the same goods are liable to the process of foreign attachment, issuing from the Courts of common law.

It applies to the case of a piratical capture, and the civil remedy is not merged in the criminal offence.

In case of default, the property attached may be condemned to answer the demand of the libellant.

It is not necessary that the property to be attached should be specified in the libel.

*It seems,* that an attachment cannot issue without an express order of the Judge, but it may be issued simultaneously with the monition; and where the attachment issued in this manner, and in pursuance of the prayer of the libel, this Court will presume that it was regularly issued.

Mauro
v.
Almeida.

APPEAL from the Circuit Court of Maryland.

This was a libel filed in the District Court by the appellants, resident merchants of Baltimore, against the respondent, Almeida, charging him with having forcibly and piratically taken from on board a certain vessel, off the capes of the Chesapeake, and within the territorial limits of the United States, the sum of 5,000 dollars, in specie, belonging to the appellants, and converted the same to his own use, without bringing it into any port or place for adjudication. The libel further stated, that the said Almeida had absconded from the United States, and fled beyond the jurisdiction of the Court, and that no means of redress remained for the libellants, unless by process of attachment against the goods, chattels, and credits of the said Almeida, which were also about to be removed, by his orders, to foreign parts. The libel also prayed a personal monition, and likewise *viis et modis*, and that the respondent might answer the premises on oath, and be compelled to pay the appellants the said sum of 5,000 dollars, and damages ; and in default thereof, that his goods, chattels, and credits, when attached, be condemned to answer the premises, &c. The Marshal returned, that he had attached certain goods and chattels of the said Almeida ; that the said Almeida was not to be found within the District, and that he had left a copy of the monition at the late dwelling house of Almeida, and had affixed it at the public ex-

change, and on the mast of the vessel containing the goods and chattels attached by him. But although the transcript of the record contained a petition for the sale of the attached-goods, and an order of the Court denying the prayer of the petition; yet it did not appear by the record by what authority the attachment issued. But it appeared by the admission of counsel at the hearing, that the attachment had been issued by the clerk of the District Court, as a process of course, without any particular order of the Judge. The respondent appeared by a proctor of the Court, and demurred to the libel. On the argument of the demurrer, the District Court dismissed the libel, and ordered, that the goods, chattels, and credits, attached, should be restored with costs. This decree being affirmed, *pro forma*, by the Circuit Court, the cause was brought by appeal to this Court.

Mr. *Hoffman* and Mr. *Mayer*, for the appellants, argued, (1.) That on principle the process of attachment must be considered as peculiarly applicable in admiralty proceedings. As the Court acts habitually *in rem*, the proceeding by attachment very naturally became a part of its practice. Hence it was often resorted to in early times in England; but the Courts of common law, influenced by an illiberal and jealous spirit, have gradually encroached upon the admiralty judicature; and, we may readily believe, as we are told, that it has fallen into desuetude

*1825.*

Manro
v.
Almeida.

*Feb. 26th.*

1825.

Manro
v.
Almeida.

in that country.[a]   But this does not prove that its legal existence is extinguished.   It is still in use on the European continent, whence the local customs of London and Exeter were also derived; the principle being, that persons are to be reached by justice through the medium of their property, as well as by direct proceedings *in personam;* and though there are some exceptions to the application of this principle, yet it is universally applied to the case of absconding debtors.[b]   Contrary to the opinion of Huberus, the proceeding by attachment was known to the civil law, and is expressly provided for by the *Digest,* in the case of an absconding defendant.

.2. It has been said, that if the proceeding by attachment, in the Admiralty, be applicable to cases of contract, it cannot properly be applied to a tort such as the present.   But there is no authority to sustain such a distinction.   In *Clerke's Praxis* no distinction is laid down between tort and debt; but the course of proceeding is intimated in that book as applicable to both; and the language in 2 *Bro.* 434. includes all grievances and claims whether of contract or tort.[c]   In this country, however, it has been expressly adjudged to extend to tort as well as debt.[d]   It may be admitted, that where the tort

a 2 *Bro. Civ. and Adm. Law,* 333.

b *Van Leeuwen's Rom. Dutch Law,* 542, 543. 546. 548.

c *Hall's Adm. Pract.* 60, 61. 63. 70. 78. 82. 89.

d *Bee's Adm. Rep.* 60. 64. 141. 186.   2 *Gallis. Rep.* 41, . Del Col v. Arnold, 3 *Dall.* 333.   The Cassius, 3 *Dall.* 123.   2 *Sir L. Jenkins' Works,* 714. 754.

is of so indefinite a character that it can be reduced to no certain estimate, attachment will not lie. But here there is an obvious standard for determining the amount of the wrong, and liquidating the damages. The property taken consisted of specie dollars. Where a tort can be thus defined, attachments have been allowed even from the Courts of common law." *Res non per se invicem sed per pecuniam estimantur, et non pecunia per res.* Even before the statute of Marlbridge, for remedy in excessive distresses, where *money* was taken in such cases, trespass would lie; because money is the measure of its own value, and of every wrong concerning it.[b] There is then, here, as much certainty in the demand, from the nature of the wrong, as is required in debt. The appellants do not sue as for a *tort*, by that name; but they state their complaint, and leave it to the Court to give it the benefit of such technical forms as are appropriate to the case. Even at common law, they might have devested their claim of all the formal characteristics of tort, and given it the qualities of contract and the certainty of debt. The wrong concerning money exclusively, they might have brought *indebitatus assumpsit* for money had and received, instead of trespass for money taken and carried away. A Court of Admiralty, with its characteristic liberality, will regard their

a *Sergeant's Law of Attach.* 44. 2 *Bro. Pennsylv. Rep.* 28. *Appendix.* 5 *Serg. & Rawle,* 450. 3 *Term Rep.* 338.
b 2 *Bac. Abr.* tit. *Distress.* 1 *Burr.* 590. 2 *Str.* 281.

claim as having assumed this technical form, if it be necessary for the purposes of justice.

3. Even if the process issued irregularly in this case, for want of a previous special application to the Judge, it is now too late to object to the irregularity, since the appearance of the defendant cures all formal defects in the process.[a] But the equitable maxim, that what ought to be done will be considered as done, is applicable in a Court of Admiralty; and if the claim be so verified as that the process of attachment ought to have issued, the Court will consider it as having duly issued. *Quod fieri non debet factum valet,* is a maxim applicable to the omission of acts merely directory and formal in their nature. It may be that the course of the English High Court of Admiralty requires a previous application to the Judge to authorize the issuing an attachment, but such is not the practice in the United States. The irregularity might have been taken advantage of by an exception, in the nature of a plea in abatement, or by a motion to set aside the process, but not upon demurrer, as here attempted.

4. This is a complaint cognizable on the instance side of the Court, and not of prize jurisdiction. The libel alleges a capture within the territorial jurisdiction of this country, and, therefore, a violation of its neutrality. It is then not a case of ordinary belligerent capture, involving the rights of war, and requiring the cognisance

*a* 3 *Cranch,* 496. 4. *Cranch.* 421.

of the Prize Court.   A mere maritime tort is out of the sphere of the prize jurisdiction, which is confined to captures *jure belli*.   The libel here charges a piratical taking, and not a capture *jure belli*.   The act of 1794, c. 50. s. 6. authorizes the District Courts to take cognisance of *all* cases of capture within our waters.   It brings them within the civil or instance jurisdiction of the Admiralty, and does not consider such cases as subjects of prize jurisdiction, which had already been vested in the District Courts.

5. The civil remedy in this case is not *merged* in the piracy charged as the wrong of which the appellants complain.[a]  That doctrine only applies to cases of felony and treason ; and takes its rise from the policy of the ancient common law, to compel the despoiled party to prosecute his appeal for robbery, and to prevent the compounding of felonies.   Piracy is not felony at common law, nor has it all the common law incidents of felony, although in some cases it is expressly declared by statute to be felony.   Although the stat. 28 Hen. VIII. c. 15. makes piracy triable according to the course of the common law, yet it has not been interpreted to place it on the footing, and give it the technical qualities, of felony.   A pardon of *felonies*, since this statute, does not, *ex vi termini*, include piracy.[b]  The act of Congress goes no farther, in identify-

a Co. Litt. 111, 112.   5 T$q$-m Rep. 175.  4 Bl. Comm. 70. 268. 862.   14 John's. Rep. 268    2 Bro. Civ. & Adm. La v, 110.
b Bac. Abr. tit. Piracy.   Pardon

ing piracy with felony, than the statute of Henry does. An attachment against a pirate's goods, for a robbery committed by him, was known to the earlier periods of the law, and there was a writ from Chancery to authorize it.[a] But, it is clear, that the doctrine of merger cannot be applied to the case of a pirate absconding from justice, and where the individual sufferer cannot prosecute him criminally. Such is understood to be the recently adjudged law in England, even in respect to a felony at common law.

6. It was unnecessary that the attachment should specify the goods to be attached. No rule of practice prescribes it, and no principle of convenience requires it. In the analogous case of distringas on mesne process at common law, no such specification is made. The party whose goods are attached may release them, by appearing and giving security; and if he suffers them to be condemned and sold by default, no more of the proceeds will be decreed to the libellant than is sufficient to satisfy his demand.

7. Nor is the locality of the territory or jurisdiction within which the property is attached material to the validity of the attachment, it being seized in the exercise of the Admiralty judicature upon a subject within its established jurisdiction, and the property taken, or the right to it, not being the immediate object of the suit, but only incidental to its prosecution. *Clerke's Praxis* (Pt. 2. tit. 28.) does, indeed, speak of

---

a *Fitzh. Nat. Brev.* 114.　2 *Gallis. Rep.* 408, 409.

goods within the ebb and flow of the tide, or on the sea, being subject to the attachment; but it evidently alludes to these instances only by way of exemplification, not of restriction. This is also evident from tit. 32. which authorizes the attachment of the defendant's goods and credits in the hands of a third person, without restriction as to locality.

<div style="text-align: right">1825.</div>
<div style="text-align: right">Manro</div>
<div style="text-align: right">v.</div>
<div style="text-align: right">Almeida.</div>

Mr. *Taney*, contra, argued, (1.) that a civil suit could not be maintained for the injury complained of in the libel. The remedy is here sought *in personam* by a suit in the Instance Court. The attachment is a mere ancillary process to compel appearance. The property is out of the jurisdiction of the Court, and this is a proceeding against other property to compel an appearance. The wrong charged in the libel is a piracy. Can this be treated as a private wrong? There is no case in the records of the English Admiralty to authorize such a proceeding, and both principle and analogy are against it. The absence of all authority in adjudged cases is a strong argument that it is not law. It is said that piracy is not treason nor felony. In England it was treason, and is felony. It has been such since the stat. 25 Edw. III. c. 2.[a] The goods of pirates, not belonging to others, are forfeited to the crown, as in felony.[b] How, then, can these

a 4 Bl. Comm. 71.
b 2 Bro. Civ. & Adm. Law, 402.

Vol. X

1825.

Manro
v.
A leida.

goods be made liable to satisfy the damages sus-tained by a private party?

But, it is said, that the injured party may waive the tort, and treat it as a contract. The only case where this may be done is, where, on a conversion of the plaintiff's goods, and a subsequent sale and receipt of the goods, the plaintiff may ratify what is done, and consider the goods as having been received by his authority. But that is in the case of a private tort, which may be waived : a wrong to the public cannot be waived. The authority of Dr. *Browne* is express, that in such a case the remedy is either criminally, as for a public crime, or in the Prize Court, as for a wrongful taking as prize.[a]

2. If the appellants can maintain a civil suit in such a case, can they do it in this form of proceeding? Will an attachment from the admiralty lie against the goods of an absent or absconding debtor? The power of proceeding in this manner once existed, and was analogous to the proceeding by foreign attachment according to the custom of London; but has long since been disused in England,[b] and, like many other usages in the admiralty, has become obsolete.[c] But the foreign attachment, according to the custom of London, only applied to cases of contract; and Sir L. Jenkins claims the admiralty jurisdiction to be exercised in this manner only

a 2 *Bro. Civ. & Adm. Law,* 113.
b 2 *Bro. Civ. & Adm. Law,* 434.
*Hall's Adm. Pract.* 62.

in cases of contract.[a] The practice, as it is laid down by *Clerke*, is plainly confined to contracts. The caption of tit. 28. part 1. is " of the warrant to be impetrated *in rem*, where *the debtor* absconds," &c. And tit. 32. states, that " sometimes the person, *who, by loan, or other maritime contract, is indebted to another*," &c. and then authorizes an attachment of the credits or goods of the debtor in the hands of a third person, upon the principle laid down in the *code,* that *debitor creditoris est debitor creditori creditoris ;* all which evidently implies, that the whole proceeding is confined to matters of debt and contract.[b]

Although the proceeding by attachment has been occasionally resorted to in this country, yet it cannot be said to have gained a legal footing ; and it would be an extremely inconvenient practice in our divided jurisdiction, where there may be as many different attachments issued at the same time as there are Districts in the Union. But, to prevent the abuses to which it is liable, it is indispensably necessary that this process should only issue by an express order of the Court. There is no precedent for its issuing of course, and as it cannot issue without an affidavit, the sufficiency of the matter contained in the affidavit, and the libel, are fit subjects for the determination of the Judge, and ought not to be confided to the discretion of a mere ministerial

*1825.*

*Manro*
*v.*
*Almeida.*

a 3 *Hall's Law Journ.* 571. 2 *Bro. Civ. & Adm. Law,* 435.
b *Hall's Adm. Pract.* 60. 70.

1825.

Manro
v.
Almeida.

officer, such as the clerk.    So, also, the property
to be attached should be specifically stated in the
warrant.    This is required by *Clerke,* in the pas-
sages already cited.    Tit. 28. authorizes " a
warrant to be impetrated to this effect, viz. to
attach *such goods or such ship* of D., the defend-
ant, in whose hands soever they may be ; and to
cite the said D. specially as the owner, and all
others who claim any right or title to them," &c.
These errors were not cured by the defendant's
appearance, because, if we resort to the analogy
of common law proceedings, his appearance dis-
solved the attachment; and, in the present case,
he appeared *under protest,* for the purpose of
contesting the regularity of the proceedings.

*March 8th,*    Mr. Justice JOHNSON delivered the opinion of
the Court.

The record in this cause sets out the libel, the
demurrer, and the decision of the Court upon
the demurrer.    So far the case is consistent and
intelligible ; but the record contains, also, a pe-
tition for the sale of certain attached goods, a
survey of the goods, and a decision against the
petition, but no exhibition of the process or mode
by which these goods came into the custody of
the Marshal.    As the decision of the Court sus-
tains the demurrer, we are left at a loss upon
the record, to discover how process of attach-
ment came to be issued.    To obtain such pro-
cess is the very prayer of the libel, and the de-
cision of the Court is against that prayer.

All the solution that the case presents, is to be

found in the argument of counsel, and their mutual admissions.

The clerk, it seems, issued the attachment as process of course, and the respondent, instead of moving to quash it for irregularity, appeared to the libel, filed his demurrer, and was content to let the regularity of the attachment abide the decision of the Court upon the general questions raised upon the libel. The Court appears to have treated the subject under the same views, since the decree of the District Court, after dismissing the libel, contains an order, " that the goods, chattels, and credits attached, be restored, with costs ;" which decree was affirmed *pro forma* in the Circuit Court.

Upon this state of the case the cause has been argued, as one bringing up to this Court a question on the regularity of the process issued by the clerk ; and if the process so issued, and the return of the Marshal upon it, and a motion to quash the writ, had been set out on the record, there is no question that the appeal would have brought up the whole subject. But as the record is deficient in these particulars, we do not perceive how we can take notice of that part of the Judge's decision which orders the restoration of the goods attached.

We must, therefore, confine ourselves to the questions raised on the libel and demurrer.

The immediate question presented is, whether the Court below erred in refusing to the libellant the process of attachment on the case made out in his libel ?

1825.

Manro
v.
Almeida.

And this resolves itself into two questions; the first arising on the *right*, the second on the *remedy* of the case. It must be here noticed, that the legality of the seizure made by Almeida is not now in question; that question may be undergoing adjudication, for aught we know, in a Court of competent jurisdiction, and we are not to be understood as prejudging the influence which the decision of a foreign tribunal may have upon the final adjudication between these parties. The defendant has demurred under protest, and the only question now is, whether the libellant has made out, *prima facie*, a good cause for relief in the admiralty.

The Courts of the United States have jurisdiction, as Courts of admiralty and maritime jurisdiction, in cases of maritime torts, and proceeding *in personam* as well as *in rem.*

The ground of complaint is a maritime tort, the violent seizure on the ocean of a sum of money, the property of the libellants. That the libellant would have been entitled to admiralty process against the property, had it been brought within the reach of our process, no one has questioned. The only doubt on this part of the subject is, whether the remedy *in personam,* for which this is a substitute, (or, more properly, the form of instituting it,) can be pursued in the admiralty.

On this point we consider it now too late to express a doubt. This Court has entertained such suits too often, without hesitation, to permit the right now to be questioned. Such was the case of *Maley* v. *Shattack,* (3 *Cranch,* 458.) Such is the principle recognised in *Murray* v. *The Charming Betsey,* (2 *Cranch,* 483.) where the Court decrees damages against the libel-

lant. Such, also, was the principle in the case of the *Apollon*, (9 *Wheat. Rep.* 362.) in which the libel was directly *in personam*, and damages decreed. We consider that question, therefore, as not to be stirred.

The remedy by attachment, also, to compel appearance, has very respectable support in precedent. In the District Court of South Carolina, during the administration of a very able admiralty Judge, it was resorted to habitually, both in cases of tort and contract. (*Bee's Adm. Rep.* 141. The case of *Del Col* v. *Arnold*, (3 *Dall. Rep.* 333.) is the only one we know of, in which any view of this question appears to have been presented to this Court. And there, undoubtedly, the exception taken was not to the issuing of the attachment in the abstract, but to the issuing of it against a prize made from a friendly power, before the property had been devested by condemnation. The response of the Court on this point would seem to imply something more, since their decision is reported to have been, " that whatever might originally have been the irregularity in attaching the Industry and cargo, it is completely obviated, since the captors had a power to sell the prize, and by their own agreement they have consented that the proceeds of the sale should abide the present suit."

Still there is nothing to be deduced from this case which can affect the question now under consideration. The point, as stated to have been presented to the Court in gument, was certainly one of which a *captor* could not avail him-

1825.

Manro
v.
Almeida,

The Courts of the United States, proceeding as Courts of admiralty and maritime jurisdiction, may issue the process of attachment to compel appearance, both in cases of tort and contract.

self, and the original owner of the prize was not in Court. And although the Court would appear to have had the present question in view when disposing of that point, yet it is only noticed *arguendo*, as they pass on to take a ground which precluded the necessity of considering the point made in argument.

We, therefore, consider this altogether a new question before this Court.

The jurisdiction of the admiralty rests upon the grant in the constitution, and the terms in which that grant is extended to the respective Courts of the United States. The forms and modes of proceeding in causes of admiralty and maritime jurisdiction, are prescribed to the Courts by the second section of the Process Act of 1792. In the Process Act of 1789, the language made use of in prescribing those forms implied a general reference to the practice of the civil law ; but in the act of 1792, the terms employed are, " according to the principles, rules. and usages, which belong to Courts of admiralty, as contradistinguished from Courts of common law."

By the laws of Maryland, the right of attachment may be asserted in the Courts of common law, and the Court below appears to have considered the libel in this instance as an attempt by the libellant to avail himself in the admiralty of the common law remedy by attachment. The forms of the libel must determine this question, and there we find the prayer expressed in these words: " To the end, therefore, that your libel-

lants may obtain speedy relief in the premises, they pray process of attachment against the said goods, and chattels, and credits, of the said J. A., which may be found within the jurisdiction of this honourable Court, and the process thereof, according to the just course of the admiralty, and that monition *viis et modis* be made accordingly," &c. " to compel an answer," &c.; and " finally, that the said goods, and chattels, and credits, when duly attached, may, by a decree of this honourable Court, be condemned to answer the premises."

There can be little doubt, as well from the objects embraced in this prayer, as from the argument, that the identity of the remedy in the common law and admiralty Courts, appears to have been in the mind of the party libellant.   Yet this was no ground for the total refusal of the relief prayed for ; the writ should have been granted, and the question as to ulterior proceedings under it retained, to be disposed of afterwards. The prayer of the libel contemplates two purposes ; first, to compel appearance ; secondly, to condemn for satisfaction.   Now, although the latter may be only incidental, and not the primary object of the attachment ; yet, if it be legal for the purpose of compelling appearance, the demand for the one purpose was no ground for refusing it for the other.

In giving a construction to the act of 1792, it is unavoidable, that we should consider the admiralty practice there alluded to, as the admiralty practice of our own country, as grafted upon the

1825.

Manro
v.
Almeida.

British practice; it is known to have had some peculiarities which have been incorporated into the jurisprudence of the United States. We had then been sixteen years an independent people, and had administered the admiralty jurisdiction as well in admiralty Courts of the States, as in those of the general government; and if, in fact, a change had taken place in the practice of the two countries, that of our own certainly must claim precedence.

Under the Process Act of 1792, c. 137. [xxxvi.] s. 2. the proceedings, in cases of admiralty and maritime jurisdiction, in the Courts of the United States, are to be according to the modified admiralty practice of our own country engrafted upon the British practice; and it will not be a sufficient reason for rejecting a particular process which has been constantly used in the admiralty Courts of this country, that it has fallen into desuetude in England.

On the subject particularly under consideration, it appears from an English writer, that the practice of issuing attachments had been discontinued in the English Courts of admiralty, while in some of our own Courts it was still in use, perhaps not so generally as to sanction our sustaining it altogether on authority, were we not of opinion, that it has the highest sanction also, as well in principle as convenience.

It is a mistake, to consider the use of this process in the admiralty as borrowed from, or in imitation of, the foreign attachment under the custom of London. Its origin is to be found in the remotest history, as well of the civil as the common law.

Origin of the process of attachment in the admiralty.

In the simplicity of the remote ages of the civil law, the plaintiff himself arrested the defendant, and brought him before the Pretor. But as the sanctuary of his own habitation was not to be violated, if he came not abroad, a summons was attached to his door-posts citing him to appear and answer. Hence our monition *viis et modis*. If he still proved recusant after three

times repeating this solemn notice, a decree issued to attach his goods ; and thus, this process of the admiralty had a common origin with the common law mode of instituting a suit by summons and distress infinite. If the defendant obeyed, he could only appear upon giving bail ; and thus again the analogy was kept up with the appearance at common law, which was synonymous with filing special bail.

Thus, this process has the clearest sanction in the practice of the civil law, and during the three years that the admiralty Courts of these States were referred to the practice of the civil law for their " forms and modes of proceeding," there could have been no question that this process was legalized. Nor is there any thing in the different phraseology adopted in the act of 1792, that could preclude its use. That it is agreeable to the " principles, rules, and usages, which belong to Courts of admiralty," is established, not only by its being resorted to in one at least of the Courts of the United States, but by the explicit declaration of a book of respectable authority, and remote origin, in which it is laid down thus : " If the defendant has concealed himself, or has absconded from the kingdom, so that he cannot be arrested, if he have any goods, merchandise, ship or vessel, on the sea, or within the ebb or flow of the sea, and within the jurisdiction of the Lord High Admiral, a warrant is to be impetrated to this effect, viz. to attach such goods or ship of D., the defendant, in whose hands soever they may be ; and to cite the said

Manro
v.
Almeida.

D. specially as the owner, and all others who claim any right or title to them, to be and appear on a certain day to answer unto P. in a civil and maritime cause." (*Clerke's Praxis by Hall*, part 2. tit. 28.)

Cases in which an attachment may issue.

I have cited the passage at length, in order to facilitate a reference which must be made to it on several other points in this opinion. And, (1.) it appears from this authority, that where a defendant has concealed himself, or absconded from the kingdom, this process may issue. In this particular, the averments in the libel conform literally to the authority.

2. It is required that the goods and effects to be attached should be within the jurisdiction of the admiralty. To this the libel conforms also, for the prayer is for process against " the said goods, and chattels, and credits, of the said J. A. which may be found within the jurisdiction of the Court, and the process thereof, according to the just course of the admiralty."

3. It is required, that the attachment issue against any goods, merchandise, ship, or vessel, on the sea, &c. The only deviation in this particular is, that the process prayed for is against the credits, as well as the goods and chattels, &c. within the jurisdiction of the Court.

On this part of the prayer, the question is raised, as to what goods and chattels the attachment may issue; where situated, and whether against credits and effects in the hands of third persons, but not tangible or accessible to the Marshal.

This question arises from a comparison of the tit. 32. p. 70. *Clerke's Praxis by Hall*, with the 28th before cited. The language of the 28th would seem to confine the operation of the attachment to goods and chattels " on the sea, or within the ebb and flow of the sea." But, by reference to the 32d, it appears, that it is consistent with the practice of the admiralty also, in cases where there is no property which the officer can attach by manucaption, to proceed to attach goods or credits in the hands of third persons, by means of the simple service of a notice.

To all the questions which may be supposed to arise on this part of the case, we give one general answer, viz. that as goods and credits in the hands of a third person, wherever situated, may be attached by notice, there cannot be a reason assigned why the goods themselves, if accessible, should not be actually attached; and although it is very clear, that the process of attaching by notice seems given as the alternative, where the officer cannot have access to the goods themselves, yet all this may be confided to the discretion of the Judge who orders the process; and if the party libellant was entitled to the process at all, the Court was not justified in refusing it altogether.

4. The libel prays, that the articles attached may be condemned to answer the demand of the libellant.

On this subject it is very clear, that the primary object of the attachment is to obtain an ap-

1825.

Manro

v.

Almeida.

The property attached may be condemned upon a default.

pearance.   But, it is equally clear, that upon the third default in personal actions, the goods arrested were estreated, and, after a year, finally abandoned to the plaintiff.   But as this proceeding was too dilatory for the movements of the admiralty, the condemnation and sale, after proof of the cause of action, was substituted for it. There was, therefore, nothing incorrect in uniting the prayer for condemnation with the acknowledged end of forcing an appearance; and if there had been, it was no ground for refusing relief as far as the claim was sustainable in the admiralty.

It may be remarked here, that the case is somewhat embarrassed by the state of the pleadings, inasmuch as, after appearance, it is hardly conceivable on what ground the attachment could be granted.   It would seem, that the defendant, for some cause, had been permitted by the Court to appear and plead without giving bail to the action.   There are such causes known to the practice of the civil law, and we are compelled to take the case as we find it.

The civil remedy not merged in the criminal offence of piracy.

It has been further argued, that as the libel alleges the trespass complained of to have been piratically done, the civil remedy merges in the crime.   But this we think, clearly, cannot be maintained.   Whatever may have been the barbarous doctrines of antiquity about converting goods piratically taken into droits of the admiralty, the day has long gone by since it gave way to a more rational rule, and the party dispossessed was sustained in his remedy to reclaim the

property as not devested by piratical capture. It
is hardly necessary to quote authority for this
doctrine, but it will be found to have been the
rule of justice as early as the reports of Croke
and Ventris.

<div style="float:right">1825.

Manro
v.
Almeida.</div>

If the party may recover his property, why
not recover the value of it from any goods of
the offender within reach of the admiralty?
We think the doctrine of merger altogether in-
applicable to the case. Even at common law, it
was confined to felonies, and piracy was no felony
at common law.

On the question, whether the property to be
attached should have been specified in the libel
or process, we have before remarked, that as
neither the process nor return is before us, we
can express no opinion respecting its form.
The libel contains no specification of the articles
to be attached, and if this were fatal, the demur-
rer might have been sustained. But, pursuing
the analogy with the civil law process to compel
appearance, we can see no reason for requiring
such a specification. There is no reason to
conclude, that the decree for attachment issued
against the recusant at the civil law, was other-
wise than general. And although the other
course may be pursued, and might be most con-
venient and satisfactory, yet we know of no im-
perative rule upon the subject. The authority
on which the libel was filed sanctions the general
language in which it is couched.

<div style="float:right">It is not ne-
cessary that
the property
to be attached
should be spe-
cified in the
libel.</div>

The last point made in argument was, whether
the process of attachment could issue without an

1825.

Manro
v.
Almeida

*It seems, that an attachment cannot issue without an express order of the Judge, but it may be issued simultaneously with the monition against the defendant, and viis et modis. And where the attachment issued in this manner, and in pursuance of the prayer of the libel, this Court will presume that it was regularly issued.*

order of the Judge. But here, again, we have to remark, that we can take no notice of the circumstances under which the writ actually did issue. And, looking to the libel, it appears to have been its express object to obtain such an order from the Court. That the process of attachment at the civil law did not issue of course, is very well known. It was obtained for contumacy after monition; and analogy, as well as public convenience, would seem to render the Judge's order necessary. Yet, we see no objection to pursuing the prayer of the libel, and issuing it simultaneously with the monition; the purposes of justice would seem to require that course.

Upon the whole, we are of opinion, that for a maritime trespass, even though it savours of piracy, the person injured may have his action *in personam*, and compel appearance by the process of attachment on the goods of the trespasser, according to the forms of the civil law, as ingrafted upon the admiralty practice. And we think

*The remedy by attachment in the admiralty, in maritime cases, applies even where the same goods are liable to the process of foreign attachment issuing from the Courts of common law.*

it indispensable to the purposes of justice, and the due exercise of the admiralty jurisdiction, that the remedy should be applied, even in cases where the same goods may have been attachable under the process of foreign attachment issuing from the common law Courts. For it will necessarily follow, in all such cases, that a question peculiarly of admiralty cognisance, will be brought to be examined before a tribunal not competent to exercise original admiralty jurisdiction; and that, as a primary, not an incidental question; since the whole proceeding will have

for its object to determine whether a m ritime 1825. trespass has been committed, and then to apply the remedy.

Judgment reversed, and the cause remanded for further proceedings.