Mr. Justice Johnson,

disseniimte.—

By the new and unexpected aspect which this cause has assumed, in this Court, I feel myself called upon to accompany the report of this decision with a brief explanation. Such an explanation appears necessary, not less in vindication of the course pursued by the state, of Georgia, than of the judicial-course of the Circuit Court, over which I • have the honour to preside. . —
By the. state of facts, as now exhibited, it would, .appear as if tlie Court of the sixth circuit of the district of Georgia, had been taking very undue liberties, both with the executive ;and treastfry departments of that state; and that two of the gbver- *125 fiors of that state, acting in behalf of,the state, had first come voluntarily into the Courts of-the United States, and then, only because the decision of that Court was against the rights they asserte'd, repudiated their own act, and denied the jurisdiction of the. very Court which they-had voluntarily called to decide on their .rights.
- Yet nothing can be farther- from the truth of the case. The real exposition of the incidents to the cause, lies in this; — that the actual promovent contestatio litis, was the colonizingsociety^ —that Georgia, at least, in its inception, had no interest in it; —that the governor only regarded himself as a stake holder, to the three disputants who claimed the property. The slaves, as well as the proceeds' of those .which were sold; it is notorious, have, in fact, -been delivered up by the. state to one of these claimants. ■
It is true, that in this point, the legislature of-the state has differed in opinion on the question of right, from the Court that tried the cause, and surrendered them, to Bowen, instead of Madrazo; but this fact proves, that she was. not. contending for herself.
. There is no necessity, however, for speaking out of the record on this subject. The information, as well- as the claim, filed to Madrazo’s libel, both explicitly avow, that, as to the slaves remaining unsold, the governor was acting in behalf of the colonizing society; and had not the decision below be.en against their claim, and cm grounds which cannot be shaken, it is fair to conjecture^ that the exception here taken to the jurisdiction, would never have been suggested; nor had that society possessed a legal existence, so as to prosecute a suit, in its own name, is there the least reason -to believe, that the governor of Georgia would ever have presented himself, in the Courts of the United States, upon this subject.
What could he do ? This property had come legally into the hands of his predecessor — -a part had been sold — and the rest transmitted to him, specifically. Two parties presented themselves, claiming it in their respective rights; and having been1 constituted by law, the guardian of the" rights of-one; he pre-sents himself to the only Court that could take cognizance of the cause, in order to have the question of right decided, before he would, surrender the slaves, in his possession, to either claimant. ’The money raised from the sales, "he disavows having any control over.
But, in the progress of the cause, incidents occur which pro-1 dtice a total change in the views and interests of parties. A third party arises, and, on the clearest proofs and best established principles, has made out the proprietary interest to be in himself. An'appeal is taken to this Cohrt; and pending the ap *126 peal, the party who had failed, in every Court below, and must fail, wherever the rights are subjected to judicial cognizance, succeeds in preváiling on the legislature to abandon the property to him.
■ Thus, then, the colonizing society have lost all hopes from a suit at law; Bowen has obtained the property; the legist lature that gave it to him, can, at least, feel no desire to have Madrazo’s rights confirmed' in this Court; and. all became interested in overturning their own work, and crushing Ma-drazo’s interest under the ruins.
It is certainly a purpose which cannot be willingly favoured in a Court of justice;' and I meet it, with the most thorough conviction that the .law is not with the appellants, on the objections to the jurisdiction of the Court below,' which have now, here, for the first time, been moved and argued.
There are two exceptions taken to the exercise of jurisdiction, in the Court below:—
1. That a state was a party, &c.
. 2. That the jurisdiction of the District Court never attached, because the res subjecta., was never actually in possession of that Court.
. The. facts were these,' — the negroes were certainly brought into the United States, in contravention of the Act of Congress of 1807. That Act creates a forfeiture, inasmuch as it divests the owner of all property in the slaves so brought in; and by another provision, it is left to the states to dispose of such persons of colour, in any manner they may think proper, not contravening the provisions. of that Act. The state of Georgia; by law, authorized their governor to appoint an agent to receive such persons of colour, and deliver them to the executive, to be sold, unless applied for; by the. colonizing society; and if so applied for, then to be delivered-into their possession.
These slaves were'seized by a revenue officer of the United-States, and voluntarily delivered to governor Rabun, then governor of Georgia; who had sold all, except about thirty, before the society applied to him, agreeably to the provisions of the Act.
-The Georgia law containS.no express instructions to the governor, how to dispose of the proceeds of; the sales. It-author-^ izes him to sell, after sixty.days notice, “in such manner, as he may think best calculated-for the inierest of the state;” but whether for cash, or credit, or to remain,dn; or be shipped from, the state, be meant by this provision, there,-are no means of determining. The money was, in this instance, paid into the treasury;' or, at least,.so the govern0ralleg.es, in his claim *127 io the Madrazo libel; and so we are bound to consider the facts.
Here, then, was a case of forfeiture, under a law of Congress; and fife governor of the state legally authorized to sue for,, and recover, the thing forfeited, and “ when seized and condemned,” as the Georgia law expresses it, to sell it on one state of facts; on another, to deliver it to the colonizing society. Who was to s.ue for this forfeiture; if not the state, or the governor, as its representative?. The society could not, for it had no existence in law.
The governor accordingly sold the greater part; and his successor filed an information in the District Court of the'United States, to have the residue condemned, that he might deliver them to that society. To this libel and information, Bowen, filed his claim and answer; and, while that suit was pending, Madrazo filed his libel in the District Court, praying process against the Africans remaining in the governor’s hands, and the proceeds of those which were sold. On this libel a warrant of arrest was issued against the slaves, and a monition to the governor and all concerned; in relation to the whole subject of Madrazo’s claim.
The warrant of arrest was not served in the District Court; but governor Clarke, successor of governor Rabun, appeared to the monition, without protest, and filed a claim to the Africans, in behalf of the society; as to the proceeds of those which had been sold, he simply answers, that they had been paid into the treasury, where they remained mixed up with the-treasure of the state, and beyond his control.
The pleadings were in this state, when the district Judge entered upon a plenary hearing of the case, taking into view the information of the governor with Bowen’s claim, and the. libel of Madrazo with the governor’s claim and answer; and thereupon sustained the information, and dismissed Bowen’ claim and Madrazo’s libel.
Bowen and Madrazo appealed; and, on the hearing in the Circuit Court, where a body of new evidence was introduced; the decree of the District Court was reversed, and the inform - alion and Bowen’s claim dismissed.
But having proceeded so far, the Circuit Court found itself thus situated.
As the District Court had, sustained the information,, it. would have been nugatory to enforce its warrant of arrest upon the. slaves, since they were already in possession of the. state. Madrazo’s libel being dismissed in that Court, no further steps were taken, to render the res subjecta, into actual possession.
But,-when-the information was dismissed, añd Madrazo's *128 libel sustained in the Circuit Court, it followed, that it was . error in the District Court, not to have enforced the service of the warrant bf arrest on the slaves, or done some equivalent act. Thus situated, the .Circuit Court could not send back the cause; .because, by the 24th section of the Judiciary Act of 1789, the Circuit Court is required to. go on and make such decree, as this District Court .ought to have made. That Court thought that the obligation to perform this duty, carried with it all the incidents necessary to perform it, and ordered process accordingly. To this, the governor again, without protest, responded,- by Voluntarily entering into a stipulation to' hold the slaves, subject to the order of that Court; and then the Court, considering itself legally in possession of the res, made the decree in favour of Madrazo, which is here brought up for revision.
■On the question of fight, upon the evidence before the Circuit Court, there can scarcely be two opinions. The cargo was Madrkzo’s — it was captured by a privateer — fitted out in Baltimore — run into Fernandina — there sold to Bo,wen — carried. across the. country to the Creek agency, within the limits of the United States, and where its jurisdiction attached, notwithstanding the Indian title existed — -and,- although Bowen, the tortiou sowner, committed an offence by introducing them into the country; Madrazo was not privy to that offence; and was innocent of any act that could work a forfeiture of his interest.
But the question now to be considered, is exclusively that of jurisdiction; and it is insisted, first, that as the state was a party, and the party defendant in, both cases, in the Circuit Court, that Court could not maintain jurisdiction of the subject.
, That a state.is not now suable by an individual, is a ques-" tion on which the Court below could not have paused a moment. '
The. 11th amendment to the Constitution, put that question ■at rest for ever. But where is the provision of the'Constitution, which disables a state from suing in the Courts of the Union ?
The second .section of the third article,, extends the judicial power of the United States,' to all cases arising under the Law of the United States, and to all cases of admiralty and maritime jurisdiction; ’to controversies between two or moré states, between a state and citizens of another state — and between a state, or the citizens thereof, and foreign states, citizens, or subjects.
It is true, the next .section provides, that, in all cases in which a state shall be a party, the Supreme Court shall have *129 original jurisdiction. But, it is .obvious, that original, does not mean exclusive; and, in the 13th section of the Judicial Act, of 1789, it is so treated; since the legislature there declares, in what instances the jurisdiction of the Supreme Court slictll be exclusive, and in what concurrent, when a state is a party. The words of that section are: “The Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature, where a state is a party, except between a state and its citizens; and except also between a state, and citizens of other states, and aliens; in which latter case, it shall have original, but not exclusive jurisdiction.”
Now, considering this section in connexion with the Constitution, it is obvious, that the word exclusive, there used, must be considered as applying solely to the Courts of- the United States; since it never could have been imagined, that the states were to be restricted from suing in their own Courts, or those of their sister states; and thus construed, it must carry the implication, that the states may sue in any other Courts of the United States, in cases comprised within the jurisdiction vested in those Courts,by the Judiciary Act; provided,the cause of action, or the parties, be such as bring the suit within the cases to which the judicial power of the United States is extended, by the Constitution.
In a suit against an alien, then, there can be no question, that a state may sue in the Circuit Court; and must-prosecute a suit there, if the alien chooses to assert the right of transfer secured to him, under the 12th section of that Act.
And so, with regard to suits against consuls, and vice-consuls, it is perfectly clear, that the suit of a state must, if the defendant'insists upon his right, be prosecuted in the District Courts of the United States.
The 9th section of the Act, being that which prescribes the jurisdiction of the District Courts, is explicit on this point. But that section embraces other cases, in which,t without any strained construction, the states may assert the rights,, of a suitor, in the District Court.
The words of the section are: “The District Courts shall have exclusive original cognizance of all civil causes of admi. ralty and maritime jurisdiction, including all seizures under Laws of Impost, Navigation, and Trade of the United States, where seizures are made on waters, See.; -and shall also have éx-clusive original cognizance of all seizures on land, See.; and of all suits for penalties, and forfeitures, incurred under the Laws-of the United States.”
Now, it is very clear, that wherever the District Court is vested with “ exclusive original cognizance,” the Supreme Court.can possess no original jurisdiction; and such is clearlv the case. ’ *130 with regard to seizures, and suits for forfeitures, under the Laws of the United States, and suits in the admiralty. And, unless some reason-can be shown, why a state should not prosecute a suit for a forfeiture, under the Laws of the United •' States; it follows, with regard to the information, that the jurisdiction was rightfully exercised by the District Court, in the present instance. The admiralty suit shall be separately considered. But why may not a state prosecute a suit for a forfeiture, under a law of the United States ? Take the cases of a law of Congress passed to aid the states, in the collection of a tonnage duty 5 or of a penalty, under their inspection laws. In the one case, there may be a seizure on the water, and in the other, on the land: in either, there may be a suit for a forfeiture; and in all, the penalty; might, very rationally, be given to the state, or its prosecuting officer. TJie present, so far as it involves the question on the information, is precisely one of those cases. Here was a forfeiture, incurred under 'a law of the United States; and the benefit of it, was consigned to the states, if they chose to accept it. Here the state did accept -it, and authorized their executive to assert the rights derived under the Law of Congress.
An examination of the exceptions in. the thirteenth section of the Act,' which marks out the jurisdiction of the Supreme Court, will throw light upon this subject.
The language of the section is: “That the Supreme Court shall have exclusive jurisdiction of all controversies of a civil nature, where a state is a party, except between a state and its citizens.; and except also, between a state and citizens of other .states, or aliens; in which latter' case, it shall have original, but not exclusive jurisdiction.”
Now, it may seem unaccountable, at first view.'why these exceptions should have been extended to- controversies between a state and its own citizens; since controversies between a state and' its own citizens, is not one of the subjects of jurisdiction enumerated in the Constitution. And the Solution is to be found in this, that the grant of jurisdiction, as .to cases arising under'the Constitution, Laws, See. of the United States, and of admiralty and maritime cauSes, is not restricted .to, or limited by any relation, or description of-persons. Controversies, in these branches of jurisdiction, may, ’therefore, -by possibility, arise' between a state and its own citizens; certainly between a state and the citizens of other states, or aliens, under the laws of the Union, .or in admiralty and maritime, cases.
As the law regards this information as a. civil suit, in rein, .on the exchequer side of the.admiralty, and it was grounded olí a law of Congress — the citizenship of the claimants, can-haye' no influence on the question of jurisdiction. I think, *131 however, that it appears somewhere in this voluminous record, that Bowen was a citizen of Georgia; but whether of that ' state, a sister state, or a foreign state, the controversy, if it be regarded as* one with individuals, is expressly excepted from the exclusive jurisdiction of the Supreme Court;- and, I must think} is within the original jurisdiction of the District Court. And if so, it follows, that the state must, upon appeal from a decision there made in its favour, assume the attitude of. a defendant in- any Court, into which the cause may be legally carried, by appeal or writ of error.
In England, the king cannot be sued, yet he is daily brought before the Appellate Courts, as a defendant in error. It has long since been decided that this is legal. And thus, too, the United States continually appears upon the docket of this Court,-as a party defendant; and, foi’the same reason, although not suable originally, yet upon a judgment obtained, injunctions have been granted against parties who could not otherwise have been made defendants: as, for example, the United States.
The thing is unavoidable — it is incident to the right of appeal. .Justice could not be administered without it. ■ There would be no reciprocity — the law would operate unequally, and to the prejudice of the citizen.
There is no compulsory process used to produce this reversed, I may say, nominal, state of parties. The cause is removed by a citation, or other less offensive process, and the party appears in the, "Superior Court, if he will — if not, the cause is disposed of without an appearance.
So'much for the information, and the appeal from the District Court upon it. We will -now consider the rights of the state,-in the relation in which it stood to Madrazo’s libel. I am considering the state, and not the officers of. the state, as the real party to the record.
When Madrazo’s libel was filed, the governor’s information was .pending; and as Madrazo’s libel sets out the seizure and delivery of the slaves to the executive of Georgia, and the claims advanced to the proprietary interest therein; it was properly considered in the District Court, in connexion with the infor-matión, and in the double aspect of a claim and libel, In the case of- the Antelope, the cross libel of the Portuguese was treated, reciprocally, as claim and. libel. . Considered in the relation of a claim to .the information, it is impossible to deny-, that if the state rightly preferred the information, it must have been bound by the decisions, both of the District Court, arid of • the tribunal to which an appeal lay ffom the decision of the District Court upon that information, as regarded the rights of. the claimants.
*132 And if' we consider Madrazo’s libel in the aspect of a suit ih the admiralty, it appears to me impossible to assign a sufficient reason why the state should not be equally bound.
The property or possession of.the state had been acquired •under a capture at sea — a maritime tort. It was therefore clearly a case of admiralty jurisdiction. ' Where then is the limit to this branch of the jurisdiction of the District Court? No personal relation, description, or character, imposes any such limit. The grant of jurisdiction to the'United States, and by the United States to the District Court, is without restriction — and it would be singular, if a state should be precluded from the right of appearing to assert its rights before that tribunal. Suppose the case of a capture of a library shipped to state, and a re-capture and libel for salvage; surely, in some form or other, the state must have a hearing. There is nothing compulsory upon the state — the right may be abandoned, if it will; but, after preferring a claim, will it.be contended,'that it may withdraw itself from the contest, under an assertion of state immunities, to the prejudice bf individual right? This is not a new question in the admiralty — it is considered by Godolphin, who observes “that for the same party in the same cause to surmise and move for a prohibition against that jurisdiction, to which himself had formerly submitted, and in a cause which, by the libel, appears not .other than maritime, seems quite beside the rule and practice of the. law.” (Jurisd. of the Adm. p. 116, 117,) and the two adjudged cases of Jennings and Audley, (Brow. Rep. p. 2. p. 30,) and Baxter and Hopes, (Ibid.) which he cites, do fully establish “that in all cases where the defendant admits the jurisdiction of the Admiralty Court', by pleading, then prohibition shall not be granted, if it do not appear that the act was done out of the jurisdiction. ”
Now, in this case, the state appeared, and claimed to the-monition, without protest. In the admiralty a claimant is an actor — and had the decision of the District Court been affirmed, the state would have had the full benefit of this interposition, as a party. And again, at a subsequent period, the state voluntarily surrendered the res to the Circuit Court, and took it out again on stipulation, &c., and had not this-exception now been taken, would have had all the benefit of a decree of restoration, if made by this Court. But it is insisted that consent cannot give jurisdiction — that this is a soúnd rule, and as applied to the Common Law Courts, cannot be controverted. But is it so in the admiralty ?
It must, be recollected, that the Common Law Courts have themselves released this rule, in relation 'to the admiralty. I allude to the controversy on the subject of the stipulation bonds, which was finally abandoned, on the ground of the assent *133 of the party, stipulating to submit to the jurisdiction of that Court. These decisions seem fully in point, to the present case. (2 Br. C. & A. 97, 98.)
But in the proceedings, in raw, the admiralty wants no consent or concession to enlarge its jurisdiction. All the world are parties to such a suit, and bound by it, by the. common consent of the world. The interest of a state, or the United States, in the res subject, a, must be affected by such a decision. The question will now be. considered, whether the want of an actual reduction of the res into possession in the District Court, deprived that Court of jurisdiction; or whether if it did, that circumstance would affect the appellate jurisdiction of the Circuit Court. Also, whether on the reduction of the res into possession, there was any assumption of original jurisdiction in the Circuit' Coprt ?
.On these points I cannot bring myself to feel a doubt, since the very failure in the District Court to grant process for reducing the res into possession, would be such a “ damnum irreparabile” as would sustain an appeal to the Circuit Court. Otherwise, the very ground of appeal — that which gives jurisdiction, would take it away. And what, upon an appeal, would be the course of the Circuit Court, upon such a case ? It has no power to remand the cause; for the 24th section requires, that “ when a judgment or decree shall be reversed in a Circuit Court, such Court shall proceed to render such judgment, or pass such decree, as the District Court should haveN rendered or passed. ” This section, I must believe, necessarily, substitutes the Circuit for the District Court, upon a reversal; and vests it with power to do whatever that Court could h’ave done, or ought to have done, originally, It is very important here . to notice, that not reducing the res into possession in the District Court, was the necessary consequence of its first error, in sustaining the information, and dismissing’Madrazo’s libel. For if Madrazo’s pretensions were to be considered as rejected, there could be no reason for .pursuing the means of reducing the res into possession in the District Court — and while the cause was in the Circuit Court, that necessity did not arise, for the same reason, until the decree was passed for reversing the decree of the District Court, and dismissing the information. Thus circumstanced, the power given, and duty imposed, by the 24th section, could not have been exercised otherwise than it was. The Circuit Court, alone, could proceed to do justice-between the parties, and become quo ad hoc.± vested with original powers.
The question, as’ it regards the proceeds of the Africans’ sold, is one of more nicety. For the proprietary interest in’ the negroes unsold, could well be disposed of? after the Court. *134 became actually possessed of them. The Court was not at liberty to doubt, that the stipulation would have returned the slaves, specifically, upon monition. But the proceeds of those, sold, we must suppose had been paid into the treasury; and there is no doubt, that the Court could not, and would not, have attempted, by compulsory process, to get at it. Yet, was this a sufficient reason for not'proceeding to adjudicate upon the question of right ? I think not.
It- must be noticed here, that the head of the government had omitted Ho firm or legal means, to give authenticity to the submission of the state to the jurisdiction of the Court. The letters of procuration, executed by both governor Clarke, and his successor, governor Troup, in due form, are on the files; expressly authorizing, in the name, of the state, all the acts of certain proctors of that Court, in the name and behalf of the slate.
The governor’s answer, then, was the answer of the state; and when the answer avows, that many of the. slaves were sold, and the money paid into the treasury, what is it, but acknowledging that the property of Madrazo no longer remains in specific existence, but has been sold, and appropriated by the respondent under such circumstances as convert Ma* drazo’s rights. into a pecuniary demand, a debt due by the state? Now, the state could stand in no other relation.to Ma-drazo, in this behalf, thán Bowen or the captor.would have stood, had the sale been made by .them ; and can it be supposed, that a similar answer, from either Bowen or the captor, would have deprived the Court below of its jurisdiction ?
It- is almost a work of supererogation, to resort to precedents on such a question; but if necessary, there is no want of precedents, to prove, that the District Court was bound to go on, and render justice, to the libejlant, according to the' forms of the admiralty, as far as it cduld proceed.
The case of Monro vs. Almedia, decided in this Court in 1825, was just such a case, (10 Wheat. 473.) There it .was fully considered, whether the Court might go on, and how to proceed, and-' the cause was remanded to the Circuit Court, for further proceedings. The libel charged a seizure and appropriation of a sum of money, on the ocean; and the respondent appeared, under protest, and, by demurring, admitted’ as true, what the answer here avows to be true.
And strongly analogous is the case of M’Kenzie vs. Livingston & Welsh, reported in a note to the 3d Term Rep. 333, in the case of Stuart vs. Wolf; in which M’Kenzie preferred a libel in the Vice-Admiralty Court, in Jamaica, to obtain condemnation of a sum of' money, captured by him, and not paid into the registry of the Court. Livingston and Welsh filed - a claim, and that Court decreed to them “ the sum of 1300pounds. *135 ¡a the possession of the captor. M’Kenzie appealed to the Lords Commissioners, who affirmed the decree below, and the cause was remitted for further proceedings.
In that case, the res was avowedly out of possession of the Court; and yet, upon the submission of the party who held it, the Court entertained jurisdiction, and decreed upon the cause; as if the claimant had been libellant, and the libellant stood in his place.
■ When money is the thing in contest, or the thing captured has been converted into money, it becomes essentially a debt; and, of course, a metaphysical thing — not to be arrested specifically.
Upon this view of the subject, the District Court might have exercised jurisdiction over the wliole capture; and did .entertain jurisdiction, in the very act of dismissing the libel, upon the question of right. Then, when the whole cause was brought, by appeal, before the Circuit. Court, I hold that the Circuit Court was bound to go as far as it could go, without intrenching upon the sovereign rights of the state; which, for the purposes of justice, had thus consented to enter into the litigation between these parties; — that is, as far as a decree.
■ Had not the progress of the Court been arrested by this appeal, it could certainly have gone no farther than to issue its monition.' But, it cannot be doubted, that, upon Madrazo’s petitioning the legislature on the subject, their officers would have been instructed to dispose of the property and money, according to the decree of the Court. Subsequent events, however, have given a new aspect to things; and Madrazo, with abundant proofs of his rights, is left without remedy.
Decree.- — These causes came on, Scc.,011 consideration whereof. This Court is of opinion, that there is error in so much of the decreed' the said Circuit Court, as directs restitution of the. slaves libelled by Juan Madrazo, and the issue of the females, in the custody of the government of the state of Georgia, or the agent, or agents, of the said state, and that the proceeds of those slaves, who were sold by order of the government of the said state, be paid to the said Juan Madrazo; the Circuit Court not having jurisdiction of a cause, in which the plaintiff asserts a claim upon the state; and that the same ought to be reversed and annulled; and the libel of the said Juan Madrazo is ordered to be dismissed. And this Court is further of opinion, that there is no error in the residue of the said decree, and the same is hereby affirmed; and it is further considered and ordered, that the said cause be remanded to the said Circuit Court, with directions for further proceedings, to be had thereon, according to law and justice, in confomitv to this opinion.