## MARY POOKAPU KAHOUOKALIMA MAKALIILII *vs.* THE BARK OLYMPIC COMPANY.

### January 11, 1905.

*"Civil Suit" under Sec. 739 R. S. U. S.—Suit in Admiralty:*    A suit in admiralty is not a "civil suit" within the meaning of Sec. 739 of the Revised Statutes of the United States.

*Suits in Personam.—Attachment Under Admiralty Rule 2.—Tort:* Provision of Admiralty Rule 2, for attachment of goods of defendant in suits *in personam,* when he cannot be found, applies to actions of tort as well as contract, and affects the property of foreign corporations lying within the jurisdiction of the court.

*Same.—Owners of Cargo:*    Process of attachment against a vessel under Admiralty Rule 2, will not be stayed because the interests of the owners of cargo already placed on board would thereby be prejudiced.

In Admiralty:    Libel *in Personam.*    Objection to Process.

J. J. Dunne, Proctor for Libellant.

Kinney, McClanahan & Cooper, Proctors for Libellee.

DOLE, J.   The libellant filed her libel in personam against the Bark Olympic Company, a California corporation and owner of the American bark "Olympic," belonging to and hail-ing from the port of San Francisco in the State of California as her home port, in a cause of damages for death, civil and maritime, and prays for a warrant of arrest against the libellee, with a clause therein that if said libellee cannot be found within said Territory and District, to attach its goods and chattels now within said Territory and District to the amount sued for; and that all persons or corporations interested be cited to appear and answer upon oath the said libel; and for damages with costs and disbursements, and that the goods and chattels so attached be condemned and sold to pay said damages and costs, and for such other and further relief as shall to law and justice appertain.   Order for process as prayed for was made, and before it was issued counsel for the libellee appeared and made an objection to the issuance of such process, making due reservation that he appeared only on the question of the legality of such order.   The grounds of his objection were that in suits in personam under admiralty rule 2, there was no authority for attaching the goods of the libellee within the jurisdiction of the court where such libellee was out of the jurisdiction in actions of tort, and that the court, under Section 739 of the Revised Statutes, was without jurisdiction to attach such goods in the absence of the respondent.

In regard to the first point, rule 2 provides that in suits in personam, mesne process may be by a simple warrant of arrest of the person of the defendant in the nature of a capias, or by a warrant of arrest of the person of the defendant with a clause therein that if he cannot be found to attach his goods and chattels to the amount sued for.   I find that this rule covers cases of tort as well as cases of contract, the rule making no exception, but by its words covering all suits in personam. In the case of *Manro v. Almeida,* 23 U. S. 473, 494-5, (1825), the court said:

"For a maritime trespass, even though it savors of piracy, the person injured may have his action in personam, and compel appearance by the process of attachment on the goods of the trespasser, according to the forms of the civil law, as engrafted upon the admiralty practice."

In the case of *Atkins v. The Disintegrating Company*, 85 U. S. 272, (1873), the doctrine of the former case was supported in the following words:

"A District Court of the United States, when acting as a Court of Admiralty, can obtain jurisdiction to proceed in personam against an inhabitant of the United States not residing within the District, by attachment of the goods or property of such inhabitant found within the District." (Syllabus).

In the case of *In re Louisville Underwriters*, 134 U. S. 488, 490, (1889), the court said:

"By the ancient and settled practice of courts of admiralty, a libel in personam may be maintained for any cause within their jurisdiction, wherever a monition can be served upon the libellee or an attachment made of any personal property or credits of his; and this practice has been recognized and upheld by the rules and decisions of this court."

On the second point raised by counsel for the libellee against the issuance of the process, the statute cited by him on this point is as follows:

"Except in the cases provided in the next three sections, no person shall be arrested in one district for trial in another, in any civil action before a circuit or district court; and except in the said cases and the cases provided by the preceding section, no civil suit shall be brought before either of said courts against an inhabitant of the United States, by any original process, in any other district than that of which he is an inhabitant or in which he is found at the time of serving the writ." Section 739, *Revised Statutes*.

The exceptions referred to have no bearing on the question at issue. This statute, would, of course, settle the point in favor of the libellee if it applies to a suit in admiralty. The case of

*Atkins v. The Disintegrating Company,* supra, deals with this question.     The eleventh section of the Judiciary Act of 1789, after stating the jurisdiction of circuit and district courts of the United States, provides that, "no person shall be arrested "in one district for trial in another in any civil action before a "circuit or district court.     And no civil suit shall be brought "before either of said courts against an inhabitant of the "United States by any original process in any other district "than that whereof he is an inhabitant, or in which he shall be "found at the time of serving the writ."

· Mr. Justice Swain, in delivering the opinion of the court in the case of *Atkins v. The Disintegrating Company,* in referring to the eleventh section of the Judiciary Act of 1789, cited above, said, on pages 301-2-3 :

"The prohibition to bring a 'civil suit' against an inhabitant of the United States in a district other than that whereof he is an inhabitant, or in which he shall be found, is the hinge of the controversy between these parties.     The appellees maintain that a cause of admiralty jurisdiction is a 'civil suit' within the meaning of this prohibition.     The appellants maintain the contrary.     Our views coincide with those of the appellants, and we will proceed to state succinctly the considerations which have brought us to this conclusion.     *     *     *     Construing this section, down to the second prohibition, inclusive, by its own light alone, we cannot doubt that by the phrase 'civil suit,' mentioned in this prohibition, is meant a suit within the category of 'all suits of a civil nature at common law or in equity,' with which the section deals at the outset.     This view derives further support from the ninth, twenty-first, and twenty-second sections of the act.     The ninth section gives to the District Court its admiralty jurisdiction, its common law jurisdiction, and its criminal jurisdiction.     With reference to that first named, the language is 'of all *civil causes of admiralty and maritime jurisdiction.'* · As to the second, it is *'of all suits at common law,'* &c.     The twenty-first section allows appeals from the District

to the Circuit Court '*in causes of admiralty and maritime juris-diction* where the matter in dispute exceeds the sum of three hundred dollars.' The twenty-second section provides 'that final decrees and judgments *in civil actions,*' where the matter in dispute exceeds fifty dollars, may be reviewed in the Circuit Court upon error. The distinction is thus made between admiralty and other *civil actions,* and the terms '*causes of admiralty and maritime jurisdiction,*' are applied to the former, and the phrases '*civil actions*' and '*suits at common law*' to the latter.

"We think the conclusion is inevitable that the term *civil suit,* in the eleventh, and *civil actions,* in the twenty-second section were intended to mean the same thing. The meaning of the phrase employed in the latter admits of no doubt. The language there is 'civil actions,' and it is used to distinguish them from 'causes of admiralty and maritime jurisdiction,' provided for in the preceding section. The twenty-first and twenty-second sections are *in pari materia* with the eleventh, and throw back a strong light upon the question arising under the latter. We think it dispels all darkness and doubt if any could otherwise exist upon the subject."

With this authority of the Supreme Court of the United States, I do not hesitate to find that the proposed process of attachment in this case is not within the rule of Section 739 of the Revised Statutes.

In the case of *Clarke v. New Jersey Steam Navigation Company,* 1 Story, 536-7, (1841), the question was raised whether the rule of allowing a process of attachment in an admiralty suit against the property of absent private persons would apply to the property of foreign corporations located within the jurisdiction of the court, which question was decided in the affirmative. I add the following authorities in support of the ruling on the second point; *Bouysson v. Miller,* 3 Fed. Cas. 1021, No. 1709, (1802) ; *Card v. Hine,* 39 Fed. Rep. 818,. (1889).

The counsel for the libellee further stated that he represented the parties interested in the cargo of the bark "Olympic," owned by the libellee, and that the ship had such cargo aboard and

was nearly ready to sail, and applied to the discretion of the court as to the propriety of allowing such process to issue under the circumstances. I do not feel that this offers a ground for refusing the process prayed for, as stipulations protecting the libellant can be entered into by those representing the owners, and the ship be allowed to proceed on her voyage.

The objections to the issuance of the process prayed for are overruled and the process may issue.