101 F.3d 76
 1997 A.M.C. 178, 96 Cal. Daily Op. Serv. 8369,
96 Daily Journal D.A.R. 13,959
 Marsilio DiGIOVANNI, as trustee of the DiGiovanni Family
Trust, Plaintiff-Appellee,
v.
Michael KJESSLER and Robert W. Cochran, Plaintiffs-intervenors.
FISHING VESSEL OWNERS & MARINE WAYS, INC.,
Plaintiff-intervenor-Appellant,
v.
Peter M. McMAHON, a single man; John Frankenfield, in his
separate estate and Bayside/Bayview Yacht Sales Inc., an WA
corp., in personam; M/V Royal Princess, O.N., 566682, her
engines, machinery, appurtenances, etc. in rem, Defendants.
 No. 95-35910.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Nov. 6, 1996.*
Decided Nov. 20, 1996.
 
 Gregory J. Lawless, Mullavey, Prout, Grenley, Foe, Lawless & Lawless, Seattle, WA, for plaintiff-intervenor-appellant.
 Shane C. Carew, Seattle, WA, for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington, Carolyn R. Dimmick, District Judge, Presiding. D.C. No. CV-95-00109-CRD.
 Before: WRIGHT, BRUNETTI, and O'SCANNLAIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 We must decide whether publication of notice of arrest of a vessel satisfies admiralty court rules and the Due Process Clause of the Fifth Amendment.
 
 
 2
 * Fishing Vessel Owners & Marine Ways, Inc. ("FVO") appeals from the district court's order denying its motion to set aside the default judgment in this admiralty case. The DiGiovanni Family Trust ("DiGiovanni") obtained the default judgment against the vessel M/V ROYAL PRINCESS and all persons with potential claims of maritime liens. Prior to entry of the default judgment, notice of the action against the vessel was published in the Seattle Daily Journal of Commerce pursuant to Local Admiralty Rule 150. The notice identified the vessel as the ROYAL PRINCESS, gave the vessel's official number, and the name of the vessel's owner, Peter McMahon. FVO failed to file a timely claim against the vessel.
 
 
 3
 Nearly three months after entry of the default order, FVO intervened in the action against the vessel and moved to set aside the default order. FVO alleged that it obtained a maritime lien against the vessel--then named GILT TRIP--in 1993. Apparently unbeknownst to FVO, the vessel's name was changed from GILT TRIP back to ROYAL PRINCESS in 1994. The vessel was also named ROYAL PRINCESS from 1978 to 1993. FVO claimed that it did not receive adequate notice of the action against the vessel because the published notice referred only to the ROYAL PRINCESS. The district court denied FVO's motion, stating that the notice satisfied the rules for publication.
 
 II
 
 4
 FVO claims that the published notice was deficient because it did not include all prior names of the vessel. It argues that the published notice failed to satisfy both the requirements of the court rules governing the arrest of vessels and the requirements of the Fifth Amendment's Due Process Clause.
 
 
 5
 The rules governing notice in this context do not specify precisely how the arrested property must be identified. See Fed.R.Civ.P., Supp. R. C(4); Local Admiralty R. 125. Notice under the rules, however, must at least satisfy the Fifth Amendment's Due Process Clause. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).
 
 
 6
 In considering what would satisfy due process in an admiralty case, we must be sensitive to admiralty law's unique nature as a separate body of substantive and procedural law distinct from common law. Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion, 773 F.2d 1528, 1535 (11th Cir.1985) (en banc); see United States v. ZP Chandon, 889 F.2d 233, 236 (9th Cir.1989). The Constitution established a separate jurisdictional base in the federal courts for admiralty cases. U.S. Const. art. III, § 2, cl. 1. And as courts and commentators have noted, the maritime lien is peculiar to the law of admiralty without a clearly analogous counterpart in the traditional land-based common law of liens. Schiffahartsgesellschaft, 773 F.2d at 1535; Gilmore & Black, The Law of Admiralty 586-87 (2d ed. 1975).
 
 
 7
 We must ask whether the notice in this case was reasonable given the context of admiralty law. It is reasonable to presume that a party with an interest in a vessel will keep itself apprised of events concerning that vessel, including the vessel's current name. See Tamblyn v. River Bend Marine, Inc., 837 F.2d 447, 448 n. 1 (11th Cir.1988) ("Those with any interest in a ship ... have a duty to stay aware of the events affecting that vessel. This removes from the plaintiff in an admiralty action the cumbersome burden of attempting to locate and notify all those in the world who have any interest in the boat that is the object of the action.") In fact, admiralty law has traditionally presumed that seizure of a vessel in itself constitutes constructive notice to all parties with an interest in the vessel. Wong Shing v. M/V Mardina Trader, 564 F.2d 1183, 1187 (5th Cir.1977); Loud v. United States, 286 F. 56, 60 (6th Cir.1923); United States v. Steel Tank Barge H 1651, 272 F.Supp. 658, 660 (E.D.La.1967). As Chief Justice Marshall observed,
 
 
 8
 [t]he whole world, it is said, are parties in an admiralty cause; and therefore, the whole world is bound by the decision. The reason on which this dictum stands will determine its extent. Every person may make himself a party, and appeal from the sentence; but notice of the controversy is necessary, in order to become a party, and it is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him. Where these proceedings are against the person, notice is served personally, or by publication; where they are in rem, notice is served upon the thing itself. This is necessarily notice to all those who have any interest in the thing, and is reasonable, because it is necessary, and because it is the part of common prudence for all those who have any interest in it, to guard that interest by persons who are in a situation to protect it. Every person, therefore, who could assert any title to the Mary, has constructive notice of her seizure, and may fairly be considered as a party to the libel.
 
 
 9
 The Mary, 13 U.S. (9 Cranch) 126, 143-44, 3 L.Ed. 678 (1815).
 
 
 10
 FVO does not claim that DiGiovanni knew or should have known that FVO had a valid claim against the vessel. The only means for DiGiovanni to give notice to interested parties was by seizing the vessel and publishing a notice. Given the traditional presumption of admiralty law, the published notice served to supplement the presumed constructive notice given by the seizure.[1]
 
 
 11
 The published notice contained the current name of the vessel, its unchanging official number, and the name of its owner. It was not unreasonable to publish the notice using the current name of the vessel given the presumption that interested parties will stay informed about the vessel. That the notice included the official number of the vessel bolsters this conclusion. We believe that the notice in this case was reasonably calculated to apprise all interested parties of the action against the vessel. The district court did not err.
 
 III
 
 12
 Likewise, the district court did not err when it found that the published notice satisfied Rule C(4) and the local admiralty rules. Those rules only require that the notice contain the "[i]dentity of the property arrested." Local Admiralty Rule 125. The notice published regarding the ROYAL PRINCESS satisfied this rule by stating the current name of the vessel, its unchanging official number, and its owner. The rule does not require that all prior names of the vessel be included in the notice. The notice was sufficient.
 
 IV
 
 13
 FVO assigns further error to the district court, claiming that the district court improperly based its decision on FVO's failure to record its maritime lien when such liens need not be recorded. The district court found, however, that the published notice complied with the rules for publication, and that FVO should have been alerted to the action by the published notice. This finding was sufficient to deny FVO's motion. That FVO would have been specifically served with notice had it recorded its lien was an additional equitable consideration weighing against setting aside the default judgment. The district court neither implied that FVO's failure to record its lien rendered it invalid or unenforceable, nor established a rule that maritime liens must be recorded. The district court did not err.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 [1]
 In a civil forfeiture case, the First Circuit questioned the interpretation that service of the warrant for arrest on the res itself constituted sufficient notice under Rule C, stating that such an interpretation raised both constitutional and practical problems. United States v. Approximately 2,538.85 Shares of Stock, 988 F.2d 1281 (1st Cir.1993). We do not reach this question because there was notice by publication in this case. We merely observe that, given the traditional presumption in admiralty law, we do not doubt that the published notice satisfied the Fifth Amendment's Due Process Clause