Paul L. EHORN, Plaintiff,

v.

The ABANDONED SHIPWRECK KNOWN AS THE ROSINCO, HER TACKLE, APPURTENANCES, FURNISHINGS, AND CARGO, Defendant.

No. 00–C–1086.

United States District Court, E.D. Wisconsin.

Sept. 26, 2001.

David J. Haywood, Frederick L. Zievers, for Plaintiffs.

Paul L. Barnette, Assistant Attorney General, Wisconsin Dept. of Justice, Alan Lee, Assistant Attorney General, Wisconsin Depart. of Justice, for Defendants.

## DECISION AND ORDER

CALLAHAN, United States Magistrate Judge.

### I. BACKGROUND

The plaintiff commenced this action when on August 7, 2000, he filed an in rem complaint in admiralty asserting his claim to all right, title and interest in the *Rosinco,* her tackle, appurtenances, furnishings, and cargo. According to the complaint, the plaintiff "searched for and discovered the *Rosinco* lying on the bed of Lake Michigan, approximately twelve miles off shore [of] Kenosha, Wisconsin .... Subsequent to Plaintiff's discovery of the *Rosinco* in September, 1977, Plaintiff conducted in excess of one hundred dive explorations of the *Rosinco* ...."

On August 16, 2000, the plaintiff filed a motion seeking the issuance of a warrant for the arrest of the *Rosinco*. The motion was granted and, pursuant to an order of this court, a warrant was issued on September 5, 2000. The United States Mar-

shal posted the arrest warrant in the Federal Courthouse in Milwaukee, Wisconsin.

On October 12, 2000, the court issued an Order for Publication of Notice of Action and Arrest of the *Rosinco* (Order for Publication). Pursuant to that order, notice was published on October 20, 2000, in both the *Milwaukee Journal Sentinel* and the *Kenosha News*. On November 3, 2000, the State of Wisconsin ("State" or "Wisconsin") filed with this court a claim of ownership of the *Rosinco*. Wisconsin's claim was submitted by Christine A. Gabron, an Assistant District Attorney ("ADA") for Kenosha County.

On November 16, 2000, the plaintiff filed a motion for declaratory judgment asking the court to award him "all right, title, and ownership interest in the *Rosinco*." The plaintiff's motion was based upon, inter alia, his assertion that "[n]o other person or entity ha[d] filed a claim to the *Rosinco*, her tackle, furnishings, cargo, or appurtenances."

On December 20, 2000, having been alerted to the claim submitted by ADA Gabron on behalf of the State of Wisconsin, the plaintiff filed a motion to quash such claim. The plaintiff set forth several bases for his motion, principally including (1) that the State of Wisconsin's claim was not timely, (2) that the State of Wisconsin failed to submit an answer within twenty days as required by Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") and the court's October 12, 2000, Order for Publication, and (3) that the November 3, 2000, claim submitted by the State of Wisconsin failed to set forth a valid claim of ownership under the Abandoned Shipwreck Act of 1987, 43 U.S.C. § 2101–2106.

On January 5, 2001, the court conducted a hearing to address the further processing of this action. At that hearing, the court directed the State to respond to the plaintiff's motion to quash. Pursuant to a subsequent stipulation of the parties, the court ordered the State's response to be filed no later than February 9, 2001. On February 9, 2001, Wisconsin filed (1) a motion to intervene, (2) a motion for leave to file an amended claim and answer, (3) an amended claim, and (4) an answer.

On March 9, 2001, the plaintiff filed a reply brief in support of his motion to quash. On May 29, 2001, he filed a motion for an evidentiary hearing on the State of Wisconsin's motion to intervene, and on June 1, 2001, he filed a response to the State's motion for leave to file an amended claim and answer. On June 29, 2001, Wisconsin filed a motion to strike the plaintiff's response to the State's motion for leave to file an amended claim and answer. Finally, on September 20, 2001, the plaintiff filed motions for an evidentiary hearing on his motion to quash and on his motion for declaratory judgment.

This rather lengthy barrage of motions, responses, and counter-motions has left seven motions ready for resolution: (1) the plaintiff's motion for declaratory judgment; (2) the plaintiff's motion to quash; (3) the State of Wisconsin's motion to intervene; (4) the State of Wisconsin's motion for leave to file an amended claim and answer; (5) the plaintiff's motion for an evidentiary hearing on Wisconsin's motion to intervene; (6) the State of Wisconsin's motion to strike the plaintiff's response to Wisconsin's motion for leave to file an amended claim and answer; (7) the plaintiff's motion for an evidentiary hearing on his motion to quash; and (8) the plaintiff's motion for an evidentiary hearing on his motion for declaratory judgment.

Before turning to these pending motions, the court must address some preliminary questions. Namely, the court must determine whether it has jurisdiction over the present action.

## II. SUBJECT MATTER JURISDICTION

The judicial power is defined by Article III of the Constitution and extends to, among other things, "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2 cl.1. Congress has conferred upon federal district courts exclusive, original jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction ...." 28 U.S.C. § 1333. By virtue of this affirmative jurisdictional grant by Congress, this court has subject matter jurisdiction over the present action.

## III. JURISDICTION OVER THE RES

For a court to establish in rem jurisdiction over a vessel, admiralty law has historically required that the res be arrested. *See Burns Bros. v. Long Island R. Co.,* 176 F.2d 950 (2d Cir.1949) (per curiam) (applying Admiralty Rule 10, a predecessor to the current Supplemental Rules, and holding that because "there ha[d] been no arrest of the vessel ..., jurisdiction to enter a decree *in rem* is lacking."); *The Brig Ann,* 9 Cranch 289, 13 U.S. 289, 291, 3 L.Ed. 734 (1815). The traditional arrest requirement was carried forward when the Supplemental Rules were adopted in 1966. Rule C(3)[1] provides that, upon court review of the verified in rem complaint and any supporting papers,

> if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel ... that is the subject of the action shall issue .... If the property is

a vessel or a vessel and tangible property on board the vessel, the warrant shall be delivered to the marshal for service. Supplemental Rule D also recognizes the necessity of arrest: "In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with respect to a vessel, ... the process shall be by a warrant of arrest of the vessel, cargo, or other property ...."

■ Arrest is the means by which a court obtains "exclusive custody and control over the property" that is the subject of the in rem action. *See R.M.S. Titanic, Inc. v. Haver,* 171 F.3d 943 (4th Cir.1999) (citing *Darlak v. Columbus–America Discovery Group, Inc.,* 59 F.3d 20, 22–23 (4th Cir.1995)). Such custody and control is a necessary prerequisite to the court's exercise of jurisdiction over the res. A court's jurisdiction does not, however, depend upon its having *actual* control over the res; constructive control has long been recognized as sufficient. *See The Brig Ann,* 13 U.S. at 291; *California v. Deep Sea Research,* 523 U.S. 491, 497, 118 S.Ct. 1464, 140 L.Ed.2d 626; *R.M.S. Titanic,* 171 F.3d at 964.

■ Although its precise contours are difficult to discern, constructive control quite obviously "connotes something less than physical seizure of a res by a court." *R.M.S. Titanic,* 171 F.3d at 963. No statute, rule, or court decision has ever purported to exhaustively define what constitutes constructive control. The question

---

1. Rule C, along with other Supplemental Rules and certain Federal Rules of Civil Procedure, was amended by an April 17, 2000, Order of the Supreme Court. That order provided in part that the amendments "shall take effect on December 1, 2000, and shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." April 17, 2000, Order Adopting and Amending Rules; *reprinted in Federal Civil Judicial Procedure and Rules* (West 2000). Because the motion seeking issuance of the arrest warrant was filed, and the warrant itself was issued, prior to December 1, 2000, amended Rule C should not govern this action. In any event, the 2000 amendment to this particular portion of Rule C(3) was largely stylistic. *See* Supplemental Rule C(3) advisory committee notes 2000 amendment.

whether a court has constructive control over a res often will turn upon case-specific factual considerations. In determining whether constructive control has been achieved under a particular set of circumstances, it is useful to examine 1) the underlying purposes of the arrest requirement, and 2) the types of action that previously have been held to constitute constructive control.

### A. Justifications for In Rem Arrest Requirement

#### 1. territorial jurisdiction and proper forum

 The Supreme Court examined the historical origin and function of in rem arrest in *United States v. James Daniel Good Real Property, et al.*, 510 U.S. 43, 57, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (emphasis added):[2]

> Justice Story, writing for the Court in *The Brig Ann*, explained the justification for the rule as one of fixing and preserving jurisdiction: '[B]efore judicial cognizance can attach upon a forfeiture *in rem* ... there must be a seizure; for until seizure it is impossible to ascertain what is the competent forum.' 13 U.S. (9 Cranch), at 291 ....

> As the *Brig Ann* held, all that is necessary '[i]n order to institute and perfect proceedings *in rem* [is] that the thing should be actually *or constructively* within the reach of the Court.' *Ibid.*

The Court also noted that there were situations where the nature of the property at issue is such that "the appropriate judicial forum may be determined without actual seizure." *Id.* As is the case with real estate (the example cited by the Court in *James Daniel Good*) arrest of the *Rosinco* was not necessary for the purpose of ensuring that the vessel was within the territorial jurisdiction of this court. No one disputes that the vessel is located within the Eastern District of Wisconsin.

#### 2. security for the satisfaction of judgments

Maritime arrest is also often seen as a means of providing security for the satisfaction of a judgment that might be awarded a plaintiff. *See* Russell J. Pope, *Maritime Arrest Under the Foreign Sovereign Immunities Act: An Anachronism*, 62 Tex. L.Rev. 511, 514 (1983)(citing *Manro v. Almeida*, 23 U.S. (10 Wheat.) 473, 489, 6 L.Ed. 369 (1825)). This justification, grounded on the "mobility of seagoing vessels and the resulting ease of flight to avoid execution of judgment", *id.*, is also inapplicable in the present action. Ehorn is not seeking a monetary judgment for which the *Rosinco* could serve as security. Rather, he is seeking title to and ownership of the vessel itself; and the *Rosinco*, resting at the bottom of Lake Michigan and submerged beneath roughly 200 feet of water, is not going anywhere.

#### 3. notice

The arrest requirement in admiralty law has also often been considered a means of providing notice to parties with an interest in the vessel. *See, e.g., The Mary*, 13 U.S. (9 Cranch) 126, 3 L.Ed. 678 (1815) ("The in rem process of the Admiralty Court is based upon the presumption that the fact of seizure of a vessel alone will result in

---

**2.** While the Court was addressing in rem seizure in the context of civil forfeiture under 21 U.S.C. § 881, the principles it discussed are equally applicable in an in rem admiralty case such as this. Indeed, the principles were derived from one of the Court's classic admiralty cases. Further, "[a] civil forfeiture proceeding under § 881 is an action in rem, 'which shall conform as near as may be to proceedings in admiralty.' 28 U.S.C. § 2461(b)." *Republic Nat. Bank of Miami v. U.S.*, 506 U.S. 80, 83, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992).

prompt, actual notice to all interested parties, without the necessity of formal personal notice."); *DiGiovanni v. Kjessler*, 101 F.3d 76, 78 (9th Cir.1996)(explaining that "admiralty law has traditionally presumed that seizure of a vessel in itself constitutes constructive notice to all parties with an interest in the vessel. *Wong Shing v. M/V Mardina Trader*, 564 F.2d 1183, 1187 (5th Cir.1977); *Loud v. United States*, 286 F. 56, 60 (6th Cir.1923); *United States v. Steel Tank Barge H 1651*, 272 F.Supp. 658, 660 (E.D.La.1967)."). The notice justification for arrest is relevant in the present case. It should be noted, however, that this justification is diluted to some degree by the existence in Rule C of a specific provision regarding notice. *See* Rule C(4). Nonetheless, the arrest requirement is rightfully viewed as at least a supplement to the notice provided by publication.

## B. What Constitutes an "Arrest"

The justifications for arrest having been established, it is useful to inquire whether the procedure followed by the U.S. Marshal in the present case was fully as effective a means of serving those ends as would have been those procedures already recognized as sufficient to constitute "constructive control."

It is possible that no form of admiralty arrest fulfills the notice function as well as does actual seizure. Given the condition and location of the *Rosinco*, however, actual seizure is not practicable. Supplemental Rule E(4)(b), at least to some extent, contemplates such a situation:

If the character or situation of the property is such that the taking of actual possession is impracticable, the marshal or other person executing the process shall affix a copy thereof to the property in a conspicuous place and leave a copy of the complaint and process with the person having possession or the person's agent.

In this case, affixing a copy of the arrest warrant to the *Rosinco* itself would be to some extent impracticable and, in any event, would not be a very useful means of providing notice to possible claimants. Wisconsin acknowledges that such traditional means of executing process are "impractical if not impossible." (Brief in Support of Motion for Leave to File Amended Claim and Answer, p. 8). In short, Rule E(4)(b) did not provide a viable alternative means of executing process in this action.

■ There have been other cases involving sunken and abandoned shipwrecks in which actual seizure of the vessel or service upon the vessel were not practicable. The most widely-recognized alternative is physically delivering to the court artifacts recovered from the vessel. *See, e.g., California v. Deep Sea Research*, 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998). "The propriety of exercising in rem jurisdiction over an entire ship wreck within the court's territorial jurisdiction when only part of that wreck is actually presented to a court rests upon the fiction that the res is not divided and that therefore possession of some of it is constructively possession of all." *R.M.S. Titanic*, 171 F.3d at 964 (citing *Deep Sea Research*, 523 U.S. at 508, 118 S.Ct. 1464).

■ Requiring the plaintiff to deliver to the U.S. Marshal artifacts recovered from the *Rosinco* [3] surely would have served to supplement the notice of this action that was provided by publication. However, its effectiveness in providing such notice not only to Wisconsin but also to all potential claimants is not so far superior (if it is at

---

**3.** It should be noted that, as appears from the record, the only artifact that has been recovered from the *Rosinco* is in Wisconsin's possession. A Wisconsin Department of Natural Resources Officer seized a porthole cover from the plaintiff.

all superior) to the process executed in this case as to render it the only possible means of this court's obtaining constructive control over the res.[4]

The act of publicly posting the arrest warrant was not the only way in which notice was provided in the instant action. It is also significant that the very issuance of the arrest warrant in this case was itself a public act which served to put interested parties on notice of the pendency of this action. Further, the issuance of the warrant was publicized in two newspapers of general circulation in this district, including one that has a significant statewide distribution. In short, the process executed in this action was an effective means of notifying possible claimants.

Finally, it should be noted that the procedure outlined in Rule C(3) further ensures that in rem arrest serves important ends. Before issuing the arrest warrant in this action, the court first had to be persuaded that "the conditions for an in rem action appear to exist." Supplemental Rule C(3)(a)(ii)(A). As a result, in addition to serving as a public act that signaled the pendency of this action, the issuance of the arrest warrant also served to ensure that the property was "describe[d] with reasonable particularity" and was within the Eastern District of Wisconsin. Supplemental Rule C(2)(b), (c). Thus, the very act of issuing the warrant aided in providing notice to potential claimants (through the "reasonable particularity" requirement of Rule C(2)(b)) and in ensuring that this district was the appropriate venue for this action; again, these are ends that traditionally have been served by the in rem arrest requirement.

In short, the issuing of a warrant for the arrest of the *Rosinco* and the posting of that warrant in the federal courthouse

atrium were as effective as any other practicable alternative would have been in fulfilling those purposes of in rem arrest that were implicated in this action. The court therefore finds that it has jurisdiction over the res in this action.

## IV. WISCONSIN'S MOTION TO INTERVENE

### A. Intervention of Right

Under Rule 24(a) of the Federal Rules of Civil Procedure, an applicant has a right to intervene only when the applicant has demonstrated each of the following: (1) that the application is timely; (2) that the applicant has an "interest" in the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impair or impede the applicant's ability to protect that interest; and (4) that no existing party adequately represents the applicant's interest. *See Security Insurance Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377 (7th Cir. 1995).

### 1. timeliness

■ Although Rule 24(a) imposes a timeliness requirement, it does not contain a time limitation of any specific length. The Seventh Circuit has described the purpose of the timeliness requirement as preventing "a tardy intervenor from derailing a lawsuit within sight of the terminal." *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983). In the Seventh Circuit, courts "consider the following factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the origi-

---

4. Indeed, posting in or on a public building has long been recognized as an effective means of providing notice to those with an interest in property. *See, e.g., In re Slidell's Land*, 20 Wall. 92, 87 U.S. 92, 22 L.Ed. 320 (1873).

nal parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 949 (7th Cir.2000).

■ The plaintiff does not contend that Wisconsin's motion to intervene is untimely. Such an argument would, in any event, have been unavailing. Ehorn suffers no prejudice if Wisconsin is allowed to intervene;[5] denying the motion on timeliness grounds, however, would completely foreclose the court from considering Wisconsin's interest in the *Rosinco*. The more prudent course is the one charted by the plaintiff; the fate of Wisconsin's motion to intervene should depend upon the nature of the State's asserted "interest."

### 2. Wisconsin's claimed interest

■ Wisconsin asserts title in and ownership of the *Rosinco*, the subject of this action. The plaintiff advances two principal arguments in opposition to Wisconsin's motion to intervene. First, he argues that Wisconsin has not filed a claim that entitles it to ownership of and title to the *Rosinco* under the Abandoned Shipwreck Act. Second, he argues that Wisconsin's claim of ownership of the *Rosinco* is analogous to a lien against the vessel and that such liens may not accrue while a vessel is under arrest and under the jurisdiction of the court. Both of these arguments appear to be based on the assumption that, in order to "claim an interest relating to the property ... which is the subject of the action", Wisconsin must demonstrate that it will ultimately succeed in its claim of ownership of the vessel. Such an assumption is unwarranted. The "interest" required by Rule 24(a)(2) need not rise to the level of a property right. *See Schipporeit*, 69 F.3d at 1381; *United States v. City*

*of Chicago, et al.*, 870 F.2d 1256, 1260 (7th Cir.1989) (explaining that Rule 24(a)(2) "does not require that the intervenor prove a property right, whether in the constitutional or any other sense.").

The interest asserted by an intervenor must, however, be "something more than a mere 'betting' interest." *Schipporeit*, 69 F.3d at 1380. The Supreme Court has described the requisite interest as one that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). The Seventh Circuit has characterized the necessary interest as a "direct, significant, legally protectable" one, *American Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir.1989), and has found the requirement satisfied by an intervenor's "confident expectation", *City of Chicago*, 870 F.2d at 1260.

As the foregoing descriptions indicate, "[t]he 'interest' required by Rule 24(a)(2) has never been defined with particular precision." *Schipporeit*, 69 F.3d at 1380. Courts have long recognized the dubiousness of attempting to "extract substance from the conclusory phrase 'interest' or 'legally protectable interest'". *Smuck v. Hobson*, 408 F.2d 175, 178 (D.C.Cir.1969). The more instructive approach is to examine the policies that animate the "interest" requirement, and to interpret the rule in light of those policies. *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C.Cir.1967). "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.*

The present motion to intervene entails involving only one more "apparently concerned" entity—the State of Wisconsin.

---

5. Prejudice with respect to allowing Wisconsin to intervene, it should be noted, is a separate issue from any prejudice that Ehorn may

suffer as a result of allowing Wisconsin to file an amended claim. *See infra,* Part V.B.5.

Wisconsin's asserted interest regarding the property at issue in the present action arises principally as a result of the Abandoned Shipwreck Act (ASA). The ASA provides in pertinent part as follows:

The United States asserts title to any abandoned shipwreck that is-

(1) embedded in submerged lands of a State;

(2) embedded in coralline formations protected by a State on submerged lands of a State; or

(3) on submerged lands of a State and is included in or determined eligible for inclusion in the National Register.

43 U.S.C. § 2105(a). The Act then transfers the title of any such shipwreck "to the State in or on whose submerged lands the shipwreck is located." 43 U.S.C. § 2105(c).

 "A motion to intervene as a matter of right ... should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the [claim]." *Lake Investors Development Group, Inc. v. Egidi Development Group*, 715 F.2d 1256, 1258 (7th Cir.1983). In his complaint, Ehorn avers that the *Rosinco* does not meet the criteria that subject vessels to the transfer provisions of the ASA. As Ehorn's complaint seems to contemplate, and as the ASA itself makes clear, under certain circumstances the State would rightly be found to have title to and ownership of the vessel. Put differently, it is by no means certain that Wisconsin would not be entitled to relief under certain facts. Indeed, if Wisconsin can prove the facts that it has set forth in its submissions to the court, it may well be entitled to the relief it seeks, namely an award of title to and ownership of the *Rosinco*. In short, Wisconsin has satisfied the Rule 24(a) requirement of "claim[ing] an interest relating to the property ... which is the subject of [this] action."

## 3. impairment of Wisconsin's ability to protect its interest

 The court must next examine the extent to which disposition of this action may impair Wisconsin's ability to protect its asserted interest. By his verified in rem complaint, Ehorn asserts "his claim to all right, title and interest [in the *Rosinco* ] against *all persons or entities asserting any right, title or interest in the Rosinco* ". (Complaint at p. 1) (emphasis added). Indeed, as a general principle, judgments in in rem actions "operate against anyone in the world claiming against that property. *See The Moses Taylor*, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1866) (describing in rem jurisdiction and stating that '[i]t is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world')." *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir.1999). Given the nature of in rem actions generally, and of this action in particular, if this court were to grant Ehorn the relief he ultimately seeks, Wisconsin's practical ability to protect its asserted ownership interest in the *Rosinco* would be impeded, as title and ownership would already have been awarded to Ehorn. The third requirement of Rule 24(a) is therefore satisfied.

## 4. representation of Wisconsin's interest

 The final criterion for intervention of right, that an applicant's interest not be adequately represented by the existing parties, is also quite obviously satisfied here. Ehorn is presently the only party in this action. Because Ehorn and Wisconsin both seek title to and ownership of the *Rosinco*, the interests of the latter could not be in more direct opposition to those of the former. Wisconsin has a right to inter-

vene under Rule 24(a); its motion will be granted.

## B. Permissive Intervention

■ Even if the court were to find that Wisconsin did not have a right to intervene under Rule 24(a), the court would nonetheless exercise its discretion to permit the State to intervene under Rule 24(b)(2). In addition to making a timely application, "[t]wo requirements must be met before a court may exercise its discretionary power to grant intervention under 24(b)(2). The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction." *Schipporeit*, 69 F.3d at 1377.

■ Here the common questions of law and fact relate to whether the *Rosinco* falls within the ambit of the ASA. More specifically, the common questions include (1) whether the *Rosinco* is "abandoned" and (2) if so, whether it is "embedded" or either included or eligible for inclusion on the National Register of Historic Places. It is also clear that this court would have independent jurisdiction of Wisconsin's claim under Article III of the Constitution and 28 U.S.C. § 1333. The facts underlying the present action therefore justify this court's exercising its discretion to allow Wisconsin to intervene.

## V. WISCONSIN'S MOTION TO STRIKE PLAINTIFF'S RESPONSE TO MOTION FOR LEAVE TO FILE AMENDED CLAIM AND ANSWER

■ Before turning to the remaining substantive motions in this case, the court will address Wisconsin's motion to strike the plaintiff's response to the State's motion for leave to file an amended claim and answer ("motion for leave to amend").

Wisconsin's motion for leave to amend was filed on February 9, 2001. According to this district's local rules, any response to this motion was to be filed no later than March 2, 2001. *See* Civil L.R. 7.1(b). The plaintiff's response, filed on June 1, 2001, was more than ninety days late. Although the court may, on a showing of good cause, extend the time for filing a brief, Civil L.R. 7.1(d), the plaintiff in the present action offered no reason for his late filing. The court will therefore grant the State's motion to strike the plaintiff's response.

## VI. WISCONSIN'S MOTION FOR LEAVE TO FILE AN AMENDED CLAIM AND ANSWER

Prior to the 2000 amendment, Supplemental Rule C(6)(b) [6] provided in part:

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim.

On September 25, 2000, process was executed when the warrant for the arrest of the *Rosinco* was posted in the atrium of the United States Courthouse in Milwaukee, Wisconsin. Ten days after the execution of process, calculated according to Fed.R.Civ.P. 6(a), was October 10, 2000. Claims did not, however, need to be filed by October 10. The court, in its Order for Publication of Notice of Action and Arrest of the *Rosinco* (Order for Publication) exercised its discretion under Rule C(6) to allow additional time to file a claim. Specifically, the notice that the court ordered be published directed any interested claimant to file a claim "within ten (10) days of the date of publication of this Notice ...."

---

6. Again, because both the execution of process and the consequent beginning of the ten-day filing period took place before December 1, 2000, amended Rule C should not govern the present action.

The notice was published in both the Milwaukee Journal Sentinel and the Kenosha Daily News on October 20, 2000, meaning that claims were to be filed by November 3, 2000. *See* Fed.R.Civ.P. 6(a).

On November 3, 2000, the State of Wisconsin, through Kenosha County ADA Gabron, filed a Claim of Ownership of the *Rosinco*. Although required by Rule C(6) and reiterated in the published notice, no answer was filed within twenty days of filing the claim (i.e., by November 23, 2000).

Wisconsin now seeks, by a motion filed February 9, 2001, to amend its timely claim and to file an answer. Wisconsin sets forth two main arguments in support of its motion. First, Wisconsin argues that the warrant for the arrest of the *Rosinco* was never properly executed and that, therefore, the Rule C(6) time period for filing a claim never began. Second, Wisconsin argues that, even if the period for filing a claim had expired, the court should nonetheless exercise its discretion to grant an extension and allow the State's February 9, 2001, amended claim.

### A. Expiration of the Period In Which to File a Claim

The court has already held that the warrant was properly executed. *See supra*, Part III. Based upon such execution and the published notice of the arrest and this action, claims were to be filed by November 3, 2000. Nonetheless, because this part of Wisconsin's argument is based largely on its contention that it did not receive adequate notice of this action, the court will take this opportunity to address in more detail the notice provided in this case.

The execution of process is only an ancillary means of providing notice to potential claimants under Rule C. And, as discussed above, providing notice is but one of several justifications for arrest of a vessel in an in rem action. The primary means of providing notice to claimants is contained in Rule C(4):

> **Notice** . . . . [T]he plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. Such notice shall specify the time within which the answer is required to be filed as provided by subdivision (6) of this rule.

Pursuant to the court's October 12, 2000, order, notice of this action and of the arrest of the *Rosinco* was published in two newspapers, the *Milwaukee Journal Sentinel* and the *Kenosha News*. In a case such as this, such "general notice is required in order that all persons, including unknown claimants, may appear and be heard, and in order that the judgment in rem shall be binding on all the world." Supplemental Rule C advisory committee notes 1966 adoption.

Publication may, as a general matter, be a somewhat ineffective means of providing notice to potential claimants. It is, however, the method chosen in the Supplemental Rules as the best available means in circumstances such as exist in this case.[7] However difficult it may be, those with an interest in a vessel are presumed to be sufficiently motivated to stay informed of developments with respect to that vessel. *See DiGiovanni*, 101 F.3d at 79. Further,

---

**7.** In some circumstances publication is not required. "No notice other than the execution of process is required when the property that is the subject of the action has been released [by bond, consent, stipulation, or or- der of the court] in accordance with Rule E(5)." Supplemental Rule C(4). This provision is not applicable in the present action, as the *Rosinco* was not released.

Wisconsin has not argued that the publication of this action and arrest was in any way deficient.

■ In any event, it is clear that Wisconsin had actual notice of this arrest and action well before it sought leave to file its amended claim. A state criminal complaint filed on December 10, 1999, charges Ehorn with theft and criminal damage to property. Each of these charges arise out of Ehorn's diving on the *Rosinco;* the criminal complaint alleges that the vessel is owned by the State of Wisconsin. (Brief in Support of Motion for Leave to File Amended Claim and Answer to *In Rem* Complaint, p. 2). Wisconsin has filed with this court an affidavit of ADA Gabron, the prosecutor in the state criminal proceeding. That affidavit provides in part:

14. On October 31, 2000, Attorney Zievers [Ehorn's defense counsel] faxed to me a copy of a letter dated October 30, 2000 from David J. Haywood, counsel for the plaintiff in this *in rem* action, which Mr. Zievers had received at 5:44 p.m., stating that the deadline for filing a claim for the shipwreck *Rosinco* was October 30, 2000 at 5:00 p.m.

. . . .

16. After receiving that notice, I investigated the basis for Attorney Haywood's statement in his letter. I immediately contacted the Attorney General's office, the United States Department of Justice, the Federal Court, and the State Historical Society for assistance. I determined that a claim might still be timely if filed no later than November 3, 2000. After further research, I then prepared a claim on behalf of the State of Wisconsin.

By Wisconsin's own admission, then, it had notice of this action by October 31, 2000.[8] Upon learning of the imminent deadline for filing a claim, the State did not file with this court a motion for an extension of time. Instead, it submitted a timely claim. Even if the ten day claim-filing period is calculated based on when Wisconsin admits to having actually received notice, the State did nothing within that period other than to file its November 3, 2000, claim. After Wisconsin actually learned that this action was pending, more than 100 days passed before the State sought leave of this court to file an amended claim.

### B. The Court's Discretion to Grant an Extension

■ Rule C recognizes judicial discretion to grant additional time for the filing of claims. That discretion is not, however, unbounded, *United States v. 51 Pieces of Real Property, Roswell, New Mexico,* 17 F.3d 1306, 1318 (10th Cir.1994); it is to be guided by consideration of several factors, including "the time at which the claimant became aware of the seizure, whether the [plaintiff] encouraged the delay, the reasons proffered for the delay, whether the claimant has advised the court and the [plaintiff] of its interest in defendant before the claim deadline, whether the [plaintiff] would be prejudiced by allowing the late filing, the sufficiency of the [timely filed pleading] in meeting the basic requirements of the verified claim, and whether the claimant timely petitioned for an enlargement of time." *United States v. $10,000 in United States Funds,* 863 F.Supp. 812, 814 (S.D.Ill.1994). This court's consideration of these factors leads

---

**8.** The record contains some indication that Wisconsin actually knew even earlier that this in rem action might be initiated. Attached as Exhibit 2 to the Affidavit of Paul L. Barnett, filed by the State of Wisconsin on February 9, 2001, is a document entitled Criminal Court Record. That document contains an entry dated July 31, 2000, that reads "Per conversation with DA Jambois & Atty. F. Zievers, this case may be taken to federal court."

it to conclude that Wisconsin should not be permitted to amend its claim.

### 1. the time at which the Wisconsin became aware of the seizure

 As explained above, the State of Wisconsin, by its own admission, became aware of this action no later than October 31, 2000. Thus, by the time the State filed its amended claim and answer (and its motion for leave to file such), the time periods for filing those pleadings had long since expired. In fact, the time periods had expired regardless of whether the periods were calculated based on the execution of process, the published notice, or the State's acknowledged receipt of actual notice. This factor weighs against allowing Wisconsin to file an amended claim.

### 2. whether the plaintiff encouraged the delay

Wisconsin argues that its ability to file a timely claim and answer was undermined by the plaintiff's "not notify[ing] Wisconsin of the action and the claim requirement any differently than anyone else in the world ...." (Brief in Support of Motion for Leave to File Amended Claim and Answer to *In Rem* Complaint, p. 12). However, Wisconsin was actually notified of the pending claim and action on October 31, 2000. It appears likely that Wisconsin received notice on that date only because the plaintiff believed, incorrectly, that the time for filing a claim had passed. The court will assume, solely for the sake of argument, that the delay in Wisconsin's filing its pleadings was encouraged by the plaintiff's failure to provide earlier personal notification to the State. Nonetheless, Rule C(6) contemplates that, absent exigent circumstances, claimants should be able to file claims within ten days of receiving notice of an action and arrest. Such a ten-day period, calculated from October 31, 2000, would end November 15, 2000. Even accepting the State's argument that it should have been specifically notified, the plaintiff's omitting to do so can only be said to have contributed to the delay between November 3, 2000 (the end of the filing date based on the published notice) and November 15, 2000. Nothing in Wisconsin's submissions demonstrates how the 86–day delay between November 15, 2000, and February 9, 2001 (the date on which the State sought leave to file an amended claim and answer) is attributable to the plaintiff. Because the plaintiff can be said to have encouraged, at most, only a small percentage of the overall delay, this factor weighs against allowing Wisconsin to file an amended claim.

### 3. reasons proffered for the delay

Other than its not receiving adequate notice, Wisconsin does not state any reasons for its delay in filing or seeking leave to file an amended claim. Again, the court finds that notice was not deficient in this case. Further, the court reiterates that even if notice was deficient, any shortcoming can be said to have contributed to only a small part of the overall delay in Wisconsin's filing its amended claim. This factor weighs against granting Wisconsin's motion.

### 4. advising the court and the plaintiff of asserted interest

Wisconsin's original claim asserted that "THE STATE OF WISCONSIN IS THE RIGHTFUL OWNER OF THE SHIPWRECK KNOWN AS THE ROSINCO, HER TACKLE, APPURTENANCES, FURNISHINGS, AND CARGO." Although it contained nothing in the way of factual averments, the claim did, broadly speaking, alert both the court and the plaintiff that Wisconsin was asserting an interest in the property. This factor weighs slightly in favor of allowing Wisconsin's amended claim.

**5. prejudice to the plaintiff**

Prejudice is typically found where allowing an amended pleading would diminish the opposing party's access to evidence or witnesses or would increase the costs or time of litigation. *See, e.g.,* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1488 (2d ed.1990) (examining prejudice in the context of amendments to pleadings under Fed.R.Civ.P. 15(a)). Allowing Wisconsin to file an amended claim may increase the time and costs of litigation, but such is always the case when a party faces adversarial opposition. A party who initiated a suit is not prejudiced by having to prove his case. *See Schipporeit,* 69 F.3d at 1381.

Neither can allowing Wisconsin's amended claim be said to prejudice the plaintiff in the typical sense of diminishing his access to either important evidence or witnesses. However, allowing the amended claim may have the effect of allowing Wisconsin access to a form of proof it would not otherwise have had. Ultimate resolution of this case on its merits would require the court to determine whether the *Rosinco* is eligible for inclusion on the National Register. On February 8, 2001, Wisconsin obtained a written determination from the United States Secretary of the Interior that the *Rosinco* was eligible. If the State had complied with the time restrictions set forth by Rule C and by the court, it would not have been able to include that declaration in its pleadings. Wisconsin instead would have had to prove the eligibility by such means as expert testimony; such a method of proof is unquestionably more difficult than is proof by the written declaration which Wisconsin was able to obtain as a result of its late-filed amended claim.

That being said, it is also likely that Wisconsin could have obtained the Secretary's written determination of eligibility in time to offer it as proof even if the State had filed its claim and answer within the period established by the court. In its pleadings, Wisconsin could have asserted an ownership interest in the *Rosinco* and alleged that it was eligible for inclusion in the National Register. It could then have sought the Secretary's written determination as proof of what it had plead. In short, it is not clear that Wisconsin has gained much of an advantage by delaying the filing of its final claim. If this factor weighs in favor of either party, it tips slightly in favor of allowing Wisconsin to file an amended claim.

**6. sufficiency of the original claim in meeting the basic requirements of a verified claim**

Wisconsin's original claim did not contain the verification required by Rule C(6). While such an omission may rightly be classified as "technical," "verification is an essential and necessary element of any claim." *United States v. U.S. Currency in the amount of $103,387.27,* 863 F.2d 555, 563 n. 13 (7th Cir.1988) (citing *United States v. $2,857,* 754 F.2d 208, 213 (7th Cir.1985)). The verification requirement serves an important policy underlying Rule (C), namely, the prevention of false claims. The technical deficiency in Wisconsin's original claim is the type that courts typically allow claimants to amend. *See, e.g., U.S. Currency in the amount of $103,387.27,* 863 F.2d at 561–62; *United States v.1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1436 (9th Cir.1985). Typically, when courts have determined that this factor weighs in favor of allowing an amended claim to be filed, it has been because an earlier pleading contained the information (including a verification) that should have been included in a timely verified complaint. *See, e.g., United States v. One Parcel of Real Property,* 942 F.2d 74 (1st Cir.1991) (citing cases); *United States v.*

*One Urban Lot Located at 1 Street A–1,* 885 F.2d 994, 999–1001 (1st Cir.1989) (excusing the failure to submit a verified complaint where a verified answer contained all the information required to be included in a verified complaint).

This factor does not fit well with the circumstances of the present case. Wisconsin is not seeking to amend its claim in order to correct this technical flaw; rather, it seeks leave to file a claim asserting new factual and legal bases. To the extent that this factor is relevant to this court's decision, it weighs slightly against granting Wisconsin leave to file an amended claim.

### 7. timely petition for an enlargement of time

Having been notified of this action no later than October 31, 2000, Wisconsin had several days during which it could have petitioned this court for an enlargement of time *before* the November 3, 2000, deadline. Instead, the State allowed more than 100 days to pass before it filed a motion seeking an extension. This factor also weighs against the court's allowing Wisconsin to file an amended claim.

### 8. the 2000 amendment

The essence of Wisconsin's argument is that is that it should be allowed to file an amended claim because it received inadequate notice of this action. That position is made all the more unpersuasive by the 2000 amendment to Rule C(6). The Rule now provides that interested parties must file a claim (under amended Rule C, now referred to as a "verified statement") "within 10 days after *the earlier of* (1) the execution of process, or (2) completed publication of notice under Rule C(4)." Supplemental Rule C(6)(b)(i)(A) (emphasis added).[9] Thus, the 2000 amendment clearly expresses a preference for earlier filing of claims as well as a belief that publication is sufficient to put interested parties on notice. Although the court is applying Rule C as it existed at the time this action was commenced, the court notes that the 2000 amendment carries forward the same policies that have always underlain Rule C and informed its application. Granting Wisconsin an extension of time which to file an amended claim would not consistent with those policies.

### 9. conclusion

The Seventh Circuit has held

Where the claimants have made a good-faith effort to file a claim and where the [plaintiff] can show absolutely no prejudice by the granting of an extension of time, we think it an abuse of discretion to deny an extension of time to amend a claim of ownership, absent any countervailing factors.

*United States v. U.S. Currency, in the amount of $103,387.27,* 863 F.2d 555, 563 (7th Cir.1988). In the present action, consideration of the above-factors does not satisfy this court that the State of Wisconsin has made a good-faith effort to timely file their amended claim. By October 31, 2000, at the very latest, Wisconsin was aware that this action was pending. The State also was aware by that date that claims were to filed no later than November 3, 2000. Nonetheless, Wisconsin made no effort to petition this court for an extension of time before November 3. Indeed, the State did not seek leave to file an amended claim until February 9, 2001, over 100 days after it became aware of this action. When it finally did seek leave to file the amended claim, Wisconsin offered

---

9. The amended Rule continues to recognize judicial discretion to grant additional time for filing a claim. Rule C(6)(b)(i)(B).

little in the way of reasons for its delay. Although the State argues that the delay was encouraged by the plaintiff's not providing sufficient notice, any omission by the plaintiff in this regard (and, again, the court does not here decide that notice was in fact deficient) contributed only to a small portion of the overall delay.

The court is mindful of the principle that calls for liberal construction of procedural rules in admiralty cases. *See, e.g., United States v. One Urban Lot Located at 1 Street A–1,* 885 F.2d 994, 1001 (1st Cir. 1989). Indeed, all of the federal rules are "to be liberally construed in accordance with the mandate in Rule 1 calling for the 'just, speedy, and inexpensive determination of every action.' But this does not mean that the plain requirements of the rule are to be circumvented or ignored." Wright et al., *supra,* § 1343 (making this point with respect to Rule 12, after recognizing the applicability of the principle to all of the Federal Rules of Civil Procedure). Particularly is this true where, as here, little if any justification has been offered in support of lenient application of a rule's explicit requirements; absent special circumstances, "[s]trict compliance with Supplemental Rule C(6) is typically required." *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.,* 219 F.3d 595, 598 (7th Cir.2000) (citation omitted).

Because such special circumstances are not present in this case, the court will not exercise its discretion to grant Wisconsin leave to file an amended claim. As a result, the time period within which the State was to have filed an answer also has passed. Wisconsin's motion for leave to file an amended claim and answer will be denied.

## VII. EHORN'S MOTION TO QUASH

While Wisconsin submitted a timely claim of ownership of the *Rosinco,* it failed to timely file an answer as required by Supplemental Rule C(6). Wisconsin's claim will therefore be quashed.

## VIII. PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT

The only claim of ownership properly before the court is that contained in the plaintiff's verified in rem complaint. The record contains nothing to contradict the allegations set forth in the complaint and in those documents filed in support of that complaint. The court therefore finds to be uncontested the plaintiff's allegations that the *Rosinco* is abandoned and not embedded, as those terms are used in the ASA. The court also finds to be uncontested the plaintiff's allegation that the *Rosinco* is neither in nor eligible for inclusion in the National Register. The *Rosinco* therefore does not fall within 43 U.S.C. § 2105. Instead, the law of finds governs this action. *See* 43 U.S.C. § 2106(b) ("This chapter shall not change the laws of the United States relating to shipwrecks, other than those to which this chapter applies."). Under the law of finds, "the finder of the abandoned property acquires title to it." *Klein v. Unidentified Wrecked & Abandoned Sailing Vessel,* 758 F.2d 1511, 1514 (11th Cir.1985). Because it is uncontested that the plaintiff discovered the *Rosinco* on the bottomlands of Lake Michigan in September, 1977, it is the judgment of the court that the plaintiff possesses all right, title and interest in the *Rosinco,* her tackle, appurtenances, furnishings, and cargo.

## IX. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the State of Wisconsin's motion to intervene be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the State of Wisconsin's motion to strike the plaintiff's response to Wisconsin's motion

for leave to file an amended claim and answer be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the State of Wisconsin's motion to file an amended claim and answer be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to quash the State of Wisconsin's claim be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for declaratory judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for an evidentiary hearing on Wisconsin's motion to intervene be and hereby is **DENIED** as moot;

**IT IS FURTHER ORDERED** that the plaintiff's motion for an evidentiary hearing on its motion to quash be and hereby is **DENIED** as moot;

**IT IS FURTHER ORDERED** that the plaintiff's motion for an evidentiary hearing on its motion for declaratory judgment be and hereby is **DENIED** as moot;

**IT IS FURTHER ORDERED** that the clerk is directed to enter judgment declaring that the plaintiff, Paul L. Ehorn, possesses all right, title and interest in the *Rosinco*, her tackle, appurtenances, furnishings, and cargo.