In the

# United States Court of Appeals
## For the Seventh Circuit

————

Nos. 01-3882 & 01-4326

PAUL L. EHORN,

*Plaintiff-Appellee*,

v.

SUNKEN VESSEL KNOWN AS THE "ROSINCO," her tackle, appurtenances, furnishings, and cargo,

*Defendant.*

Appeal of:

STATE OF WISCONSIN,

*Intervening Defendant.*

————

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 00-C-1086—**William E. Callahan, Jr.**, *Magistrate Judge.*

————

ARGUED MAY 20, 2002—DECIDED JUNE 21, 2002

————

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Between 1916 and 1928 the *Rosinco*—the first diesel-electric vessel berthed in Chicago—was one of the largest (at 95 feet and 82 gross tons) and most opulent yachts on the Great Lakes. While en route from Milwaukee to Chicago early on September 19, 1928, the *Rosinco* struck something and sank in 185 feet of

water about 12 miles off Kenosha, Wisconsin. Paul Ehorn was arrested in October 1998 after he retrieved one of its portholes. Wisconsin commenced a criminal prosecution, charging Ehorn with looting from a vessel that (the state believes) belongs to it under the Abandoned Shipwreck Act of 1987, 43 U.S.C. §§ 2101-06. Ehorn countered that he discovered the wreck and thus became its owner under admiralty law, because (he asserts) the state's claim does not satisfy the statutory requirements. States own two categories of vessels: those that have become "embedded" (a defined term, see 43 U.S.C. §2102(a)) and those "included in or determined eligible for inclusion in the National Register" of Historic Places. 43 U.S.C. §2105(a)(3). After the criminal prosecution had been pending for about eight months, Ehorn filed this federal admiralty action, seeking a declaration good against the world that he is the wreck's owner.



The *Rosinco*

In lieu of serving any documents on the Attorney General of Wisconsin, Ehorn had notice published in two newspa-

pers and posted in the federal courthouse. Publication is essential in an *in rem* proceeding, in case someone has a previously unsuspected interest in the vessel. But why not notify Wisconsin? Ehorn's only explanation is that his lawyer had told the criminal prosecutor that he would file an admiralty action eventually. The prosecutor was the wrong person to inform; what is more, notice that an action *will be* filed differs from notice that an action *has been* filed—for it is the latter deed that starts the procedural clock. No one representing Wisconsin in any capacity learned that an admiralty action was under way until October 31, 2000, when the prosecutor in Kenosha received a gloating letter from Ehorn's attorney, informing her that the time to file a claim had expired, that the wreck now belonged to Ehorn, and that the criminal prosecution therefore must be dismissed. (It has been stayed, not dismissed, pending the outcome of the federal action.)

Counsel miscalculated, counting time from the action's filing rather than from the notice's appearance in the newspaper. The letter backfired by alerting the prosecutor to the proceeding just in time to file a claim—which she did on November 3, the last possible date. But she did not file an answer within the 20 additional days specified by the published notice. The prosecutor alerted the Attorney General's office in mid-December 2000, and counsel there understood Admiralty Supp. R. C(6)(b) to dispense with formal answers for proceedings *in rem* until the claimant receives a copy of the complaint. Ehorn then moved for judgment, contending among other things that lack of an answer entitled him to prevail. This motion prompted the Attorney General to file on February 9, 2001, an answer, together with a request to accept it out of time. The answer alleged that the *Rosinco* had been determined to be eligible for inclusion on the National Register of Historic Places and thus belongs to the state under 43 U.S.C. §2105(a)(3). See 66 Fed. Reg. 33,555 (June 22, 2001); see also the nomina-

tion,† which includes much interesting information about the vessel and its history. The district court, acting through a magistrate judge on the parties' consent, see 28 U.S.C. §636(c), denied this motion and awarded Ehorn ownership of the *Rosinco* without further ado. *Ehorn v. Abandoned Shipwreck known as the Rosinco*, 185 F. Supp. 2d 965 (E.D. Wis. 2001). The court first concluded that an action against the vessel itself is proper, even though the Marshal had not arrested the ship (normally essential to a proceeding *in rem*, see Admiralty Supp. R. C(3)(a)). The court wrote that posting of notice in the courthouse is a satisfactory substitute to posting on the vessel—indeed preferable when it is submerged. Then it held that counsel's error in failing to answer within the time specified by the notice did not supply good cause for a belated filing. Because this left Ehorn as the only claimant, he prevailed by default.

The district court's assumption that only "good" cause permits an untimely answer in an admiralty case is incorrect, as we have held recently (though after the district court's decision). "Cause" is enough, and in admiralty an attorney's mistake can be "cause." See *Alter Barge Line, Inc. v. Consolidated Grain & Barge Co.*, 272 F.3d 396, 397 (7th Cir. 2001). Error is understandable in a case such as this, where the filing deadline appears in a notice that was never served on the only rival claimant. Criminal prosecutors, who do not represent the state in civil cases, let alone in admiralty litigation—a body of law whose arcane rules sometimes befuddle even grizzled veterans—cannot be expected to handle these matters flawlessly. Not until well after the deadline for the answer (set by the notice at 20 days from the claim) did the proceeding first come to the attention of a lawyer authorized to represent

---

† http://www.seagrant.wisc.edu/shipwrecks/michigan/Rosinco/ Rosinco1.html

the State of Wisconsin in civil litigation, and even then the state lacked the benefit of service. That the state managed to file an answer within two months of (some) notice to the Attorney General's office is a sign of its good faith, not of the sort of truculence that might justify a judgment against a party otherwise entitled to win—for recall that the answer, when filed, showed that the wreck belongs to the state under the statutory criteria.

True, the Department of the Interior did not list the *Rosinco* as eligible for the National Register until February 8, 2001, the day before Wisconsin filed its answer. Ehorn speculates that, if the state had answered by the end of November 2000, the court might have decided in his favor before the wreck was listed as eligible. That seems unlikely; the state *also* contends that the wreck is "embedded" in the lake bottom, and a court could not have come to a responsible conclusion on that question before February 2001. All that an earlier answer would have precipitated was discovery about the status of the wreck, and before the discovery process could have run its course the declaration of eligibility for listing would have handed victory to the state on a silver platter. (The *Rosinco* was finally listed on July 18, 2001. As far as we know, there was no opposition to the nomination.)

We need not determine whether the district court abused its discretion in declining to accept an untimely answer—a subject on which *Alter Barge* may be a ticket good for one ride only, see 272 F.3d at 398 ("[w]e limit our holding to the facts of this case")—because the state was entitled to withhold an answer until it had been served. Let us assume without deciding that a vessel may be "arrested" without a visit from the Marshal. (That question remains open for decision when the answer matters.) Still, even in an *in rem* proceeding personal service may be essential. Admiralty Supp. R. C *requires* publication but does not *forbid* personal service, nor would a prohibition make sense. Usually the

arrest and posting on the vessel affords notice to the vessel's owner. The normal admiralty *in rem* proceeding follows a collision, allision, or other accident of which the owner is bound to be aware. As this case shows, though, arrest in admiralty does not always ensure that the principal competing claimant has actual knowledge of the contest. There was no accident or equivalent event, no notice that was likely to come to the attention of Wisconsin—which Ehorn knew from the criminal prosecution to be his major, if not only, rival for ownership. These circumstances make it impossible to excuse Ehorn from sending written notice of the pending action. Even in an *in rem* action, the initiator must give notice reasonably calculated to alert any known competing claimant. See *Dusenbery v. United States*, 534 U.S. 161 (2002). The due process clause of the fifth amendment requires no less. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) (publication is inadequate when you know who the interested parties are and how to contact them). See also, e.g., *Greene v. Lindsey*, 456 U.S. 444 (1982) (posting a notice on affected property not necessarily adequate); *Schroeder v. New York City*, 371 U.S. 208 (1962) (riparian rights; publication inadequate); *Walker v. Hutchinson*, 352 U.S. 112 (1956) (eminent domain; publication inadequate); *New York City v. New York, New Haven & Hartford R.R.*, 344 U.S. 293 (1953) (bankruptcy; publication inadequate).

Ehorn readily could have served the persons authorized to represent Wisconsin in admiralty proceedings. Yet he has not done so to this day. Wisconsin's time to file an answer thus has not started to run, see Admiralty Supp. R. B(3)(b) ("defendant shall serve an answer within 30 days after process has been executed"), and the district court was not entitled to enter a default judgment for lack of a timely answer.

REVERSED AND REMANDED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*